\* \* EMERGENCY RELIEF NEEDED \* \*
\* \* NEW FILING \* \*

The Honorable Renee Marie Bumb
U.S. District Court Judge
United States District Court
District of New Jersey
Mitchell H. Cohen U.S. Courthouse
Fourth & Cooper Streets
Camden, New Jersey 08101

RECEIVED

JAN 13 2021

AT 8:30_____M
WILLIAM T. WALSH
CLERK

RECEIVED IN
CHAMBERS OF

JAN 12 2021

RENÉE MARIE BUMB, U.S.D.J.

RE:  Ex Parte Application - Plea for Emergency Aid on Behalf of All
Inmates at FCI Fort Dix Suffering from Egregious Human Rights
Abuses and Violations of Constitutional Rights

Your Honor:

I write to you seeking the potent and immediate intervention of this
Court to rush to the aid of 2,589 inmates presently incarcerated at FCI Fort
Dix who are suffering not only from an uncontrolled and virulent resurgence
of coronavirus within the prison, but also from the human rights abuses and
the deprivation of the rights and protections enshrined in our Federal
Constitution perpetuated upon us by the deliberate indifference and utter
incompetence of the Federal Bureau of Prisons and FCI Fort Dix
administration, staff, and officers. While unsure of the proper remedy or
procedure, I beg of the court to provide relief by any means necessary, under
the All Writs Act, 28 U.S.C. §1651, in the interests of justice.

Specifically, I ask that:
(1.) A SPECIAL MASTER be appointed by this Court to oversee FCI Fort Dix and
to prevent further violations or denials of inmates' rights; and
(2.) that CLASS COUNSEL be appointed to aid all FCI Fort Dix inmates in
properly seeking redress before the court.

A special master should be specifically empowered to effectuate
temporary release or compassionate release of medically vulnerable inmates to
protect them from being sickened or for inmates who need medical care not
provided by BOP or FCI Fort Dix due to COVID-19 illness or long-term damage
from said illness, in accordance with 18 U.S.C. §3582, §3622, other First
Step Act provisions, elderly offender home confinement program, or CARES Act

1

provisions.

These steps are immediately needed as a proper response requires expert assistance because of the massive and complex nature of the catastrophe we are experiencing at FCI Fort Dix and that the deprivations of our rights significantly undermine our abilities to fight for ourselves before this Court from behind the prison gates.

I candidly raise the following to the court for its consideration:

(1.) The COVID-19 outbreak at FCI Fort Dix low-security facility first began to spread in Mid-October 2020 on the facility's West Compound and continued into mid-December. A second wave spread on the East Compound in mid-December to present and began again on the West Compound in Late December 2020 into January 2021.

(2.) We believe COVID-19 first entered the FCI Fort Dix low-security facility by one or both of two ways:

(a.) by upwards of 300 federal prisoners transferred to FCI Fort Dix from other BOP facilities that experienced severe COVID-19 outbreaks (including but not limited to FCI Elkton) without those transferred prisoners being properly tested or without other protection protocols in place; or

(b.) by FCI Fort Dix staff or officers, or outside contractors, who were positive for COVID-19, having entered the facility and interacted with inmates without being properly tested or screened before entering the facility, and without other protection protocols in place.

(3.) We believe that the second wave of COVID-19 spread is due to rushed and nonsensical declarations of inmates being "recovered" and the ensuing rushed lessening of quarantine restrictions as well as the nonsensical and idiotic moving and shuffling of inmates between housing units and between the facility's west and east compounds from November 2020 to present.

(4.) Inmates are not receiving proper medical care or treatment for COVID-19 at FCI Fort Dix. Staff are not treating or providing individualized aid for symptoms and only telling inmates sickened with COVID-19 to "drink some water", "lay down", or "take a tylenol". This lack of care and treatment is causing many inmates to develop long-term COVID-19 complications including long-term symptoms and irreparable damage and harm to their bodies.

(5.) There is a deliberate and extensive pattern of falsification of inmate

2

medical records. Symptomatic inmates are being recorded as "asymptomatic". Symptoms and vital sign statistics are not being properly logged. In a few instances, informatin is being entered for appointments never held or tests never administered. This undermines our ability to get future medical needs properly addressed.

(6.)   The administration of COVID-19 testing has been half-assed and inconsistent. Hundreds of inmates have never been tested. The numbers reported are likely an undercount and an inaccurate picture of the spread of the illness within the prison. In many instances, the numbers do not "add up". FCI Fort Dix has repeatedly chosen to not test inmates when it is convenient to hide the infection numbers. Inmates are not "tested out" of quarantine status by two successive negative tests but by an arbitrary and inconsistent recovery standard claiming that inmates are not contagious or no longer symptomatic after 7, 10, 14, 21, or 30 days.

(7.)   Inmates are declared "recovered" without an individualized assessment but because of the arbitrary passage of time discussed in paragraph 6. Many inmates deemed "recovered" were still showing symptoms or are having complications from long-term damage but BOP counts them as "recovered".

(8.)   As soon as inmates are declared "recovered" they are largely being ignored by medical services. Getting an appointment for continuing medical issues is almost impossible and inmates are waiting 8 to 10 weeks to be seen. Even after being scheduled for appointments, inmates' medial needs are not being properly addressed or their complained-of symptoms being ignored or mistreated.

(9.)   Inmates who are declared recovered can be and have been forced to work jobs that require heavy lifting, physical exertion, and long hours-- especially difficult given that COVID-19 causes difficulty breathing, shortness of breath, damage to the lungs, heart or other organs, that are exacerbated by exertion.

(10.) Inmates assigned to UNICOR (Federal Prison Industries), the BOP factory system, have been forced back to work despite many of those "declared recovered" still complaining of being sick and unable to perform the work demanded. Staff have told UNICOR inmates that they do not care--"if you can sit up, you can work".

(11.) On December 28, 2020, 40 "recovered" inmates from housing unit 5812 were called up to be transferred "temporarily" to the East Compound to be forced to work as the entire East Compound was placed in quarantine lockdown. Three of those 40 inmates had tested positive for the first time on December 23, 2020-- one of those being Jaoquin Terrazas-Dieguez, whose positive diagnosis delayed him from being transferred to a private prison for immigration hold.

(12.) Inmates are threatened with disciplinary charges and being "locked up" in disciplinary lock-up for refusing to work--several have been so punished.

(13.) On the night of January 1-2, 2021, one of those 5812 inmates transferred to the building 5712 on the East Compound for work on December 28th, was Larry Wayne Aiken, an inmate with significant cardiac health issues, who suffered a heart attack and/or respiratory arrest after an intense 10-hour shift in the East Compound kitchen. He reportedly required CPR administered by another inmate to revive him because medical staff were significantly tardy in responding to the call for aid.

(14.) As of the date undersigned, eleven (11) of thirteen (13) inmate housing units are on quarantine lockdown on both East and West compounds:

(a.) On the West Compound: 5802, 5841 (UNICOR), and 5852 (RDAP) are currently experiencing COVID-19 illness and spread of infection.

(b.) On the West Compound: 5803 and 5806 are for inmates isolated before transfer within the facility, to other BOP facilities, or being released home or to pre-release/halfway house custody. Note: Housing Unit 5803 was "condemned" and closed-down in December 2019 due to being dilapidated and unsafe. It was reopened as a housing unit in the spring 2020 with no repairs or remediation of unsafe conditions.

(c.) 5812 was on quarantine lockdown from October 18, 2020 to December 4, 2020, when its approximately 230 inmates were all deemed "recovered" with no further attention since.

(d.) 5811 has not experienced a COVID-19 outbreak to date--however, its inmates have not been tested en masse.

(e.) All 7 housing units on the East Compound are under some form of quarantine lockdown status.

(f.) Unit 5712 on the East Compound is the education building. The

4

approximately 40 inmates from 5812 who were forced into work were assigned quarters on the third floor. They share one half-working shower.

(15.) Inmates on the East Compound have been reportedly subjected to a "communications lockdown" and a turning off of inmate public telephones and email systems which is a denial of their first amendment rights to contact family, friends, legal counsel, or media representatives at this important time when information needs to be shared or contact facilitated.

(16.) While on quarantine status inmates are routinely denied access to and from attorneys and the courts as staff interfere or deny legal calls or legal mail.

(17.) Sick call slips, inmate request forms to staff, and adminstrative remedies are being ignored, delayed or discarded.

(18.) The Warden of FCI Fort Dix, associate wardens, and other senior administrative staff seem to be "missing in action" and have not been seen in weeks by inmates. Staff and officers have advised inmates that they are "working from home" and to expect delays.

(19.) Inmates are further advised that BOP's Northeast Regional Office is reportedly furloughed or experiencing staff shortages which has made the BP-10 administrative remedy process extremely delayed. Both the Northeast Regional Office and BOP Central Office obstruct efforts to advance remedy appeals via BP-10 and BP-11 per 28 CFR §542.18.

(20.) Even after repeatedly advising the members of New Jersey's congressional delegation that there would be a moratorium on inmate bus transfers to FCI Fort Dix from other facilities, buses conveying transferring inmates continued to arrive and depart.

(21.) Staff and officers expect us to abide unsafe and unsanitary conditions at FCI Fort Dix including dilapidated housing with holes in the walls and ceilings, water damage, leaking plumbing, broken heating systems (and lack of heating), rodent, vermin and insect infestations, black mold on walls and other surfaces and accumulating trash (largely due to limited "trash call" movements).

(22.) Despite advising the courts that proper cleaning and sanitary measures are in place, inmates are routinely denied access to adequate cleaning supplies. When supplies are available, staff and officers routinely seize

5

them from inmates.

(23.) Staff and officers are routinely engaging in retaliation for inmates pursuing their rights in court or through administrative remedies or through other means including retaliatory searches of their person and property and needlessly harassive drug testing and urinanalysis.

(24.) Staff and officers are frequently interacting with inmates without taking proper safety measures including wearing masks or personal protective equipment (PPE).

In his novel "The House of the Dead", Fyodor Dostoyevsky said that "the degree of civilization in a society can be judged by entering its prisons" (ibid, trans. C. Garnett, 1957, page 76). We have a problem at FCI Fort Dix that begs for attention and remedy. Normal administrative procedures are broken given unreasonable obstacles and indefinite timeframes. There is undue prejudice from delay and irreparable injuries may occur without immediate judicial intervention to prevent systemic constitutional and human rights violations that are causing an objectively intolerable risk of harm, causing and prolonging illness, and needless suffering. See Helling v. McKinney, 509 U.S. 25 (1993); DeShaney v. Winnebago County Dept. of Social Service, 489 U.S. 189, 199-200 (1989); and Estelle v. Gamble, 429 U.S. 97, 103-104 (1976).

I ask the court for the following prospective relief:

(1.) appointing a Special Master as discussed above;

(2.) appointing class counsel to represent all FCI Fort Dix inmates as discussed above;

(3.) A temporary restraining order or appropriate injunctive relief to enjoin FCI Fort Dix from forcing inmates to work. See Ex Parte Young, 209 U.S. 123 (1908).

(4.) I would further ask that an appointed special master confer with local public health officials, public health universities and medical schools to provide swift, individualized medical care to every FCI Fort Dix inmate as FCI Fort Dix medical staff have failed to provide effective treatment or containment.

We are hearing rumors that the correction officers' union is threatening to strike or walk off. If that is true, it further evinces that the Bureau of

6

Prisons has lost control and a special master would be appropriate.

I respectfully plead with this Court to provide the relief requested above to remedy deprivation or violation of our 1st, 5th, 6th, 8th, 13th, and 14th Amendment rights, and for any just and equitable relief it deems necessary.

<u>DECLARATION PURSUANT TO 28 U.S.C. §1746</u>

I, Christopher Thieme, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed January 3, 2021.

CHRISTOPHER THIEME
Reg. No. 69451-050
FCI FORT DIX
Federal Correctional Institution
Post Office Box 2000
Joint Base MDL, New Jersey 08640

P.S.   Because I am unsure of the proper form or procedure, I propose this be docketed or captioned as "In Re Thieme" or "In Re Application of Thieme" or "Ex Parte Thieme".



CHRISTOPHER THIEME
REG. NO. 69451-050
FCI FORT DIX
FEDERAL CORRECTIONAL INSTITUTION
POST OFFICE BOX 2000
JOINT BASE MDL, NJ 08640

RECEIVED
JAN - 7 2021
AT 8:30
WILLIAM T. WALSH
CLERK
M

Trenton P&DC NJ 066
TUE 05 JAN 2021 PM

X-RAYED

SPECIAL MAIL
LEGAL CORRESPONDENCE

RECEIVED
JAN - 7 2021
AT 8:30
WILLIAM T. WALSH
CLERK
M

THE HONORABLE RENÉE MARIE BUMB, USDJ
UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
MITCHELL H. COHEN U.S. COURTHOUSE
4TH AND COOPER STREETS
CAMDEN, NJ 08101

★ EMERGENCY FILING ★