**\*NOT FOR PUBLICATION**                                    **ECF NO. 38**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | | |
|---|---|---|
| CHRISTOPHER THIEME, JACOB SILVA, SIDDEEQ WILLIAMS, and ROBERT SPEED, individually and on behalf of all others similarly situated, | : : : : : | CIV. NO. 21-682 (RMB-AMD) |
| Plaintiffs, | : : | **OPINION** |
| v. | : : | |
| UNITED STATES OF AMERICA, et al., | : : | |
| Defendants | : | |

**APPEARANCES:**

Lawrence S. Lustberg, Esq., Pro Bono Counsel
Gibbons PC
One Gateway Center
Newark, NJ 07102-5310
         On behalf of Plaintiffs[1]

John Francis Basiak, Assistant United States Attorney
U.S. Attorney's Office
402 E. State Street, Room 430
Trenton, NJ 08608
John T. Stinson, Jr., Assistant United States Attorney
Samantha R. D'Aversa, Assistant United States Attorney
U.S. Attorney's Office
Mitchell H. Cohen Building & U.S. Courthouse
401 Market Street, 4th Floor
P.O. Box 2098
Camden, NJ 08101-2098
         On behalf of Defendants

---

[1] The Court acknowledges the excellent work by counsel in this matter and expresses appreciation to Pro Bono Counsel on behalf of Plaintiffs.

**RENÉE MARIE BUMB**, Chief United States District Judge

This matter comes before the Court upon Defendants' motion to dismiss the complaint (Docket No. 38; Defs' Brief in Supp. of Mot. to Dismiss, Docket No. 38-1), Plaintiff's brief in opposition to the motion to dismiss (Pl's Opp. Brief, Docket No. 42), and Defendants' reply brief (Defs' Reply Brief, Docket No. 47). The Court will decide the motion on the briefs without an oral hearing, pursuant to Federal Rule of Civil Procedure 78(b). For the reasons discussed below, the Court will grant, in part, and deny, in part, Defendants' motion to dismiss.

## I.    PROCEDURAL HISTORY

This case arises out of the conditions of confinement for federal prisoners in the Federal Correctional Institution in Fort Dix, New Jersey, the largest federal prison by population, during the COVID-19 pandemic in the early days before a vaccine was available, and where social distancing was not possible. On January 13, 2021, Plaintiff Christopher Thieme filed a pro se "Ex Parte Application—Plea for Emergency Aid on Behalf of All Inmates at FCI Fort Dix." (Compl., Docket No. 1). Thieme alleged the Bureau of Prisons ("BOP") failed to protect himself and similarly situated inmates from the spread of COVID-19 in the Federal Correctional Institution in Fort Dix, New Jersey.  On May 3, 2021, Thieme, pro se, filed his first amended complaint. ("FAC," Docket No. 8.) This Court appointed pro bono counsel and granted leave to file a second amended complaint. (Orders, Docket Nos. 10, 15.) Plaintiffs Thieme, Jacob Silva, Sideeq Williams and Robert Speed filed a second amended complaint on February 10, 2022. ("SAC," Docket No. 16.)

On behalf of a proposed class, Plaintiffs assert three claims for damages and other relief in the SAC. Count One is brought under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), and alleges that Defendants violated the Eighth Amendment by showing deliberate indifference to Plaintiffs' unconstitutional conditions of confinement, including their need for medical care. (SAC, Docket No. 16, ¶¶ 224-234.) Counts Two and Three are brought under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-2680, and allege that Defendants were negligent and grossly negligent in failing to implement measures to protect Plaintiffs from COVID-19. (*Id.*, ¶¶ 235-256.)

## II.    THE SECOND AMENDED COMPLAINT

Plaintiffs Christopher Thieme, Jacob Silva, Robert Speed, and Siddeeq Williams ("Plaintiffs") became infected with COVID-19 while they were incarcerated in FCI Fort Dix in the Fall of 2020, and they seek to represent a putative class of similarly situated prisoners.  The Defendants are United States of America; Michael Carvajal, Director of the Federal Bureau of Prisons ("BOP"); Nicole English, BOP Northeast Regional Director; David Ortiz, former Warden of FCI Fort Dix; Lamine N'Diaye, former Warden of FCI Fort Dix; and Dr. Kimberly Kodger, Associate Warden of FCI Fort Dix, whom Plaintiffs allege failed to protect their health from the spread of COVID-19. Plaintiffs focus their allegations on three specific actions or inactions that allegedly led to widespread COVID-19 infections in FCI Fort Dix:  (1) four BOP transfers of prisoners with COVID-19 from FCI Elkton to FCI Fort Dix in September and October 2020 (SAC, Docket No. 16, ¶¶ 96-136); (2) transfer of

3

prisoners with COVID-19 to the east side of FCI Fort Dix in September and October 2020 (*Id.* ¶¶ 137-164); and (3) failure to provide adequate medical care to prisoners who were sick from COVID-19 initially and with lingering symptoms. (*Id.* ¶¶ 165-191.)

## III.  DISCUSSION

### A.  Standard of Law

#### 1.  Motion to Dismiss Rule 12(b)(1)

Defendants seek dismissal of the SAC for lack of subject matter jurisdiction. A party may challenge subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) by means of a facial attack or a factual attack. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016).  In a facial attack, a party may not dispute the facts alleged in the complaint, and the court must accept the alleged facts as true.  *Id.* Unlike a facial challenge to jurisdiction, in a factual challenge, a plaintiff's jurisdictional allegations are not entitled to a presumption of truth.  *Id.*  Additionally, courts may weigh and consider evidence outside the pleadings. *Id.* Plaintiffs have the burden of proof to satisfy the existence of jurisdiction. *Id.*

"'[A] district court must take care not to reach the merits of a case when deciding a Rule 12(b)(1) motion.'" *Id.* at 348 (quoting *CNA v. U.S.,* 535 F.3d 132, 144 (3d Cir. 2008.) "[W]hen a factual challenge to jurisdiction attacks facts at the core of the merits of the underlying cause of action," district courts should find jurisdiction and address the attack on the merits of the plaintiff's case. *Id.* (citing *Kulick v. Pocono Downs Racing Ass'n, Inc.*, 816 F.2d 895, 898 n.5 (3d Cir. 1987) (3d Cir. 1987) .

### 2.   Motion to Dismiss Rule 12(b)(6)

District courts addressing a Rule 12(b)(6) motion to dismiss for failure to state a claim, "must 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Bruni v. City of Pittsburgh*, 824 F.3d 353, 360 (3d Cir. 2016) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks omitted). In determining whether a plaintiff has failed to state a claim, district courts should disregard allegations that are no more than legal conclusions. *Id.* In performing this analysis, district courts may consider exhibits attached to the complaint, documents upon which the claims are based, and matters of public record, but may not otherwise go beyond the facts alleged in the complaint. *Id.* (citations omitted). In this regard, this Court declines to consider materials outside of the SAC submitted by Defendants, insofar as they are offered in support of their Rule 12(b)(6) motion to dismiss. Such materials may be submitted in a subsequent motion for summary judgment.

### B.   FTCA Exhaustion

### 1.   Standard of Law

"The Federal Tort Claims Act … provides that an 'action shall not be instituted upon a claim against the United States for money damages' unless the claimant has first exhausted his administrative remedies." *McNeil v. United States*, 508 U.S. 106, 107 (1993) (quoting 28 U.S.C. § 2675(a)). Specifically, a plaintiff may only seek relief under the FTCA in federal court if, after six months from the date of presentment, the

appropriate federal agency has rejected the plaintiff's administrative tort claim or failed to "make a final disposition of the claim." § 2675(a). The FTCA exhaustion requirement "is jurisdictional and cannot be waived." *Roma v. United States*, 344 F.3d 352, 362 (3d Cir. 2003).

### 2.  The Parties' Arguments

Defendants contend that this Court should dismiss Plaintiff Thieme's and Plaintiff Speed's FTCA claims under Rule 12(b)(1) because they failed to exhaust their administrative remedies under 28 U.S.C. § 2675(a). (Defs' Brief in Supp. of Mot. to Dismiss, Docket No. 38-1 at 47-50.) BOP first received an administrative tort claim from Speed on August 25, 2021. (Declaration of Corrie Dobovich ("Dobovich Decl.") ¶ 45 and Ex. 13, Docket No. 38-2.) The tort claim was rejected as unsigned. (*Id.*) Speed presented a new administrative tort claim to BOP on September 3, 2021. (Dobovich Decl. ¶ 49 and Ex. 14, Docket No. 38-2.)  Pursuant to § 2675(a), BOP had six months to make a final disposition of Speed's claim before he could deem his claim denied and file suit, which would have been March 3, 2021. Speed joined this lawsuit on February 10, 2021 (SAC ¶¶ 212-223, 235-256), before BOP made a final decision on his administrative tort claim and before expiration of that statutory six month-period. (Dobovich Decl. ¶ 49, Docket No. 38-2.)

Defendants contend that Thieme, like Speed, failed to exhaust his FTCA claims before initiating this case in January 2021. Thieme first presented his administrative tort claim to BOP on December 4, 2020. (Dobovich Decl. ¶ 36 and Ex. 10, Docket No. 38-2.) Thieme asserted three issues in the administrative tort claim that he now

seeks to litigate before this Court: (1) BOP's transferring of inmates between institutions cased a COVID-19 outbreak; (2) BOP's failure to take preventive measures, such as testing officers, staff, and outside contractors before they entered the facility contributed to the COVID-19 outbreak; and (3) BOP's failure to provide adequate medical care to inmates who tested positive for COVID-19, and allegedly falsifying inmates' medical records. (Dobovich Decl., Ex. 10, Docket No. 38-2.) On January 13, 2021, before the statutory six-month period expired, Thieme initiated this case, complaining of the same alleged harms as those raised in his administrative tort claim. (Compl., Docket No. 1.) Thieme also filed the First Amended Complaint ("FAC") before expiration of the six-month period. (FAC, Docket No. 8.) Defendants assert that the FAC contained the same allegations Thieme included in his administrative tort claim and his original pleading. (*Id.*)

On February 10, 2022, when Thieme filed the SAC with three additional plaintiffs, they were represented by pro bono counsel. (SAC, Docket No. 16.) As in Thieme's prior pleadings and his administrative tort claim, Plaintiffs alleged Defendants failed: (1) to provide adequate protections against the spread of COVID-19; (2) to implement preventative measures, such as halting transfers (like those from FCI Elkton), reducing prison population, and cancelling work details; and (3) to provide adequate medical services to prisoners during the pandemic. (SAC ¶¶ 201-223, Docket No. 16.)

Plaintiffs oppose dismissal for failure to exhaust FTCA administrative remedies. (Pl's Opp. Brief, Docket No. 42 at 49-52.) Plaintiffs note there is no dispute

that Silva and Williams complied with the exhaustion requirement in § 2675(a). They concede that Speed joined in the SAC before the six-month FTCA exhaustion period came to a close; although, now his claims are exhausted. Concerning Thieme, he first raised an FTCA claim in the SAC on February 10, 2022, 14 months after the administrative tort claim was received, and well beyond the six-month exhaustion requirement. (SAC, Docket No. 16). Thieme did not raise an FTCA claim in his original or his amended complaint. (Compl., FAC, Docket Nos. 1, 8.) This is significant, Plaintiffs contend, because § 2675(a)'s "jurisdictional limit is specific to actions that raise claims for tort damages." (Pl's Opp. Brief, Docket No. 42 at 50, quoting *Malouf v. Turner*, 814 F. Supp. 2d at 461.) Plaintiffs note the SAC was the first time that Thieme named the United States as a defendant—a requirement for an FTCA claim.

Based on Plaintiffs' concession that Speed brought an FTCA claim before exhausting administrative remedies under the FTCA, in their reply brief, Defendants seek dismissal of his FTCA claims. (Defs' Reply Brief, Docket No. 47 at 14-17.) Concerning Thieme, Defendants argue that because he alleged a cognizable medical negligence claim in his original and amended complaint prior to exhausting his administrative remedies under the FTCA, that his FTCA claims should be dismissed. Defendants' rely on *Malouf*, 814 F. Supp. 2d at 461, where the district court liberally construed a pro se complaint as containing an FTCA claim based on the allegation of medical negligence. (*Id.* at 14-15.)

###    3.    Analysis

Title 28 "'Section 1346(b) grants the federal district courts jurisdiction over a certain category of claims for which the United States has waived its sovereign immunity and 'render[ed]' itself liable.'" *F.D.I.C. v. Meyer* ["FDIC"], 510 U.S. 471, 477 (1994) (quoting R*ichards v. United States*, 369 U.S. 1, 6 (1962) (alteration in *FDIC*)). A plaintiff alleges a cognizable claim under the FTCA if the claim is brought:

> [1] against the United States, [2] for money damages, ... [3] for injury or loss of property, ... [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

*Deutsch v. United States*, 67 F.3d 1080, 1091 (3d Cir. 1995) (quoting 28 U.S.C. § 1346(b) and citing *FDIC*, 114 S.Ct., at 1001)).  Naming the United States as a defendant is an element of a claim under § 1346(b). *FDIC,* 114 S.Ct., at 1001 ("a claim is actionable under § 1346(b) if it alleges the six elements outlined above.") Thieme did not allege a claim against the United States in his original or amended complaint.  Therefore, he did not raise a cognizable FTCA claim by alleging medical negligence against an individual defendant. *See*, *Murchison v. Warden Lewisburg USP*, 566 F. App'x 147, 150 (3d Cir. 2014) (quoting *Mars v. Hanberry*, 752 F.2d 254, 255 (6th Cir. 1985) ("[T]he FTCA does not grant federal courts jurisdiction over actions against individual defendants such as federal employees."); *Brownback v. King*, 141 S.Ct. 740, 746 (2021) (the FTCA "opened a new path to relief (suits against the United States) while

narrowing the earlier one (suits against employees)." [2]  By the time Thieme added an

FTCA claim against the United States in the SAC on February 10, 2022, he had

exhausted his administrative remedies under § 2675(a) because BOP denied his

administrative tort claim on September 28, 2021. (Dobovich Decl., Ex. 10, Docket

No. 38-2.)  Therefore, Thieme's FTCA claims are exhausted.  The Court will grant

Defendants' motion to dismiss Speed's FTCA claims for failing to exhaust

administrative remedies and deny the motion to dismiss Thieme's FTCA claims for

nonexhaustion.

### C.    FTCA Discretionary Function Exception

#### 1.    Standard of Law

Under the discretionary function exception, the FTCA's limited waiver of

liability for tort damages against the Government:

> shall not apply to—(a) Any claim based upon an act or
> omission of an employee of the Government, exercising due
> care, in the execution  of a statute or regulation, whether or
> not such statute or regulation be valid, or based upon the
> exercise or performance or the failure to exercise or perform
> a discretionary function or duty on the part of a federal
> agency or an employee of the Government, whether or not
> the discretion involved be abused.

28 U.S.C. § 2680(a). This provision "marks the boundary between Congress's

willingness to impose tort liability upon the United States and its desire to protect

certain governmental activities from exposure to suit by private individuals." *United*

---

[2] *Malouf*, 814 F. Supp. 2d 454 (D.N.J. 2011), cited by Defendants, is not precedential, nor
does it discuss whether the plaintiff named the United States as a defendant to his
negligence claims before exhausting administrative remedies under the FTCA.

*States v. S.A. Empresa de Viacao Aereo Rio Gradense* (Varig Airlines), 467 U.S. 797, 808 (1984). Furthermore, Congress sought to "prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort[.]" *United States v. Gaubert*, 499 U.S. 315, 323 (1991) (internal quotation omitted).

Courts employ a two-part test to determine whether challenged conduct falls within this exception. "First, a court must determine whether the act involves an 'element of judgment or choice.'" *Mitchell v. United States*, 225 F.3d 361, 363 (3d Cir. 2000) (quoting *Gaubert*, 499 U.S. at 322). Second, if the challenged conduct does involve judgment or choice, a court must determine "'whether that judgment is of the kind that the discretionary function exception was designed to shield.'" *Id. at 363-64* (quoting *Gaubert*, 499 U.S. at 322) (quoting *United States v. Varig Airlines*, 467 U.S. 797, 813 (1984)). Defendants bear the burden of establishing the applicability of the discretionary function exception. *S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 333 (3d Cir. 2012) (citation omitted).

### 2.   The Parties' Arguments

Defendants contend Plaintiffs' FTCA claims are barred by the discretionary function exception because both elements of the discretionary function exception are applicable here. (Defs' Brief in Supp. of Mot. to Dismiss, Docket No. 38-1 at 38-44.) In satisfaction of the first element, Defendants assert their decisions regarding pandemic management involved an element of judgment or choice. In satisfaction of the second element, Defendants claim their pandemic management decisions are the

types of judgment that the discretionary function was designed to shield. Defendants rely on precedent that BOP is "accorded wide ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." (Defs' Brief in Supp. of Mot. to Dismiss, Docket No. 38-1 at 40, citing *Whitley v. Albers*, 475 U.S. 312, 321, 322 (1986)). Defendants contend this "wide ranging" discretion applies to FTCA claims concerning BOP's implementation of COVID-19 protocols. (*Id.* at 40-41, citing *Swinton v. United States*, Civ. No. 21-11, 2022 U.S. Dist. LEXIS 60084, at *17-18 (W.D. Pa. Mar. 31, 2022) (R.& R.); *Sanford v. United States*, Civ. No. 21-2552-RMG, 2022 WL 1210717, at *3 (D.S.C. Apr. 25, 2022); *Santiago v. United States*, Civ. No. 21-00436, 2022 WL 790805, at *2-3 (W.D. Va. Mar. 14, 2022). Defendants maintain that there was no blueprint for how to use BOP's limited resources to address the pandemic while at the same time balancing inmate welfare and public safety.

Defendants also address Plaintiffs' allegation of negligence in BOP's use of home confinement under the CARES Act. The discretionary function exception applies to BOP's decisions to release an individual to home confinement because exercise of BOP's discretion involves individualized review and a multi-factor consideration. (*Id.* at 43-44, citing 18 U.S.C. § 3624(c)(2); *Sanford*, 2022 WL 1210717, at *3 (discretionary function exception applied to FTCA claims because "[l]egislation concerning an inmate's" placement in "home confinement" leaves "that decision to the BOP's discretion"). Similarly, Defendants maintain their decision to seek compassionate release for inmates under 18 U.S.C. § 3582(c)(1) is discretionary and

"judicially unreviewable." (*Id.* at 44, citing *Crowe v. United States*, 430 F. App'x 484, 485 (6th Cir. 2011) (collecting cases). Thus, any FTCA claim based on home confinement or compassionate release is not cognizable.

Plaintiffs' oppose dismissal under the FTCA's discretionary function exception. (Pl's Opp. Brief, Docket No. 42 at 30-43.) They argue that if a federal actor's conduct is mandatory, the discretionary function exception does not apply. (*Id.* at 31, quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988); (citation omitted)). Under Third Circuit law, the exception does not apply if the act "violates the Constitution, a statute, or an applicable regulation," (*Id.* at 31-32, quoting *U.S. Fid. & Guar. Co.*, 837 F.2d at 120), because "the employee has no rightful option but to adhere to the directive," (*id.* quoting *Berkovitz*, 486 U.S. at 536.) Once a policy is promulgated to require employees to take certain acts, it must be implemented in a reasonable manner; thus, officers cannot ignore a policy's mandate or implement it negligently. (*Id.* at 32, citing *Fisher Bros. Sales v. United States*, 46 F.3d 279, 288 (3d Cir. 1995)).

Plaintiffs point to allegations in the SAC, including: "Defendants were responsible for implementation of BOP policies" (SAC, ¶¶ 14-19); "Defendants did not learn from the initial COVID-19 outbreak. Rather, they continued to ignore the relevant guidance and disregard pertinent policies with impunity[.]" (SAC, ¶ 96.) Plaintiffs submit that the most relevant policy is BOP's Coronavirus (COVID-19) Phase Nine Action Plan (Pl's Exhibit One, Docket No. 42-1.) Plaintiffs contend this was a mandatory policy which required Defendants to:

- Test staff before entering the facility, SAC ¶¶ 80, 87, 100, 122;

- Test incarcerated individuals exposed to COVID-19 or showing symptoms of the virus, *Id.* ¶¶ 80, 88-89, 93, 99, 106, 135, 145, 158, 163, 186-187, 229;

- Provide enough masks to staff and incarcerated persons and require their use, *Id.* ¶¶ 50-51, 70, 80, 82, 86, 188;

- Quarantine infected staff and incarcerated individuals, including transferees from other BOP facilities, *Id.* ¶¶ 4, 53, 68-69, 80, 91, 93, 99, 116-117, 138, 148, 159-160, 190, 250; and

- Clean the facility, *Id.* ¶¶ 85, 114, 118, 123, 163, 188, 190.

Plaintiffs concede that Defendants have discretion to create their own policies, but they assert Defendants are mandated to implement those policies and procedures once adopted.  (Pl's Opp. Brief, Docket No. 42 at 39, quoting *Hewitt v. Helms*, 459 U.S. 460, 471 (1983)). In sum, Plaintiffs submit they adequately alleged Defendants were negligent in implementing mandatory BOP policies, and the discretionary function exception does not apply.

Next, Plaintiffs submit that Defendants did not have discretion to violate Plaintiffs' constitutional rights. (*Id.* at 43-44, citing *U.S. Fid. & Guar. Co.*, 837 F.2d at 120) (citation omitted). Plaintiffs alleged that Defendants' failures to follow BOP's mandatory policies violated Plaintiffs' Eighth Amendment rights.

In their reply brief, Defendants suggest three particular errors in Plaintiffs' interpretation and application of the discretionary function exception.  (Defs' Reply Brief, Docket No. 47 at 7-11.) First, Defendants contend BOP's Action Plan provides guidance that allows flexibility and discretion not strict mandates.

The second error Defendants attribute to Plaintiffs' discretionary function analysis is overemphasis on "mandatory-sounding terms" in BOP's Action Plan. Instead, Defendants contend that federal courts must analyze the overall type of regulation or policy, not just instances where words like "shall" or "must" appear. (*Id.* at 9, citing *Thrower v. United States*, 528 F. App'x 108, 111 (3d Cir. 2013) (additional citations omitted)). Relatedly, Defendants submit that government actions should be classified along a spectrum and immunized when fully grounded in regulatory policy. (*Id.* at 9-10, citing *Whisnant v. United States*, 400 F.3d 1177, 1181 (9th Cir. 2005)). In this light, BOP's pandemic policies fit within the discretionary function exception.

The third error Defendants attribute to Plaintiffs' discretionary function analysis is their failure to allege instances where Defendants violated mandatory BOP guidelines. Defendants cite the following examples from the SAC.

- "Defendant Ortiz, N'Diaye, and Kodger never instituted a policy to test prison staff or guards for the virus[.]" SAC ¶ 87.

- "From March to October 2020, Defendants never tested the prisoner population as a whole" and "at all times relevant to this Complaint, Defendants did not have a policy to test all prisoners, even those who came into contact with COVID-19 positive staff or prisoners." SAC ¶¶ 88-89; see also *Id.* ¶¶ 80, 88-89, 93, 99, 106, 135, 145, 158, 163, 186-187, 229.

- BOP did not "[p]rovide enough masks to staff and incarcerated persons and require their use." SAC ¶¶ 50-51, 70, 80, 82, 86, 188

- BOP failed to "[q]uarantine infected staff and incarcerated individuals, including transferees from other BOP facilities." SAC ¶¶ 4, 53, 68- 69, 80, 91, 93, 99, 116-117, 138, 148, 159-160, 190, 250.

- BOP did not "[c]lean the facility." *Id.* ¶¶ 85, 114, 118, 123, 163, 188, 190.

For these reasons, Defendants urge the Court to dismiss Plaintiff's FTCA claims under the discretionary function exception of the FTCA.

### 3.   Analysis

The question of whether the discretionary function exception precludes Plaintiffs' FTCA claims involves a factual attack on jurisdiction under Rule 12(b)(1). Therefore, the Court may consider evidence outside the pleadings, but may not determine the merits of Plaintiffs' claims in doing so. In the SAC, Plaintiffs do not identify any specific mandatory BOP policies or procedures that a federal actor allegedly violated. Defendants assert BOP's multi-phased operational plan "the Action Plan" offers discretionary guidance because it "was flexible to address the unique circumstances, conditions, limitations, and available resources at each of BOP's 122 institutions." (Defs' Brief in Supp. of Mot. to Dismiss, Docket No. 38-1 at 22); Declaration of James Reiser, ¶¶ 5-6, Docket No. 38-3.) Certain aspects of the Action Plan are also addressed in the Declarations of Adam Sassaman and Nicoletta Turner-Foster. (Docket Nos. 38-4, 38-5, respectively.) Plaintiffs discuss the alleged mandatory nature of aspects of the Action Plan in their opposition brief.  (Pl's Opp. Brief, Docket No. 42 at 32-40.)

First, the Court notes that in an FTCA claim, the United States is the defendant, and may be liable for "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment…." 28 U.S.C. § 1346(b)(1). Plaintiff is not required to plead that the individual defendants were negligent, but only that any employee of the Government was negligent while

acting within the scope of his office or employment. Therefore, allegations that "Defendants or their agents" were negligent are sufficient.

Second, release to home confinement under the CARES Act, and early compassionate release for inmates is a BOP discretionary decision, and requires individualized determinations for each prisoner. *See*, *Collins v. Warden Canaan FPC*, No. 21-2878, 2022 WL 2752536, at *2 (3d Cir. July 14, 2022) (where "BOP gave "individual review" to plaintiff's case, "and given the discretion afforded to the BOP's home confinement determinations" BOP did not abuse its discretion under the CARES Act); *see* 18 U.S.C. § 3582(c)(1)(A)(i) (describing Director of BOP's discretionary authority to bring a motion to reduce sentence on a prisoner's behalf, based on extraordinary and compelling reasons.") Therefore, the discretionary function exception of the FTCA precludes negligence claims based on the exercise of such discretion.

Third, this Court finds that the multiple iterations of the Action Plan and other relevant pandemic procedures submitted by the parties contain both discretionary terms "should" and "may" and mandatory terms "shall" and "must."[3] For BOP policies and procedures that are mandatory for all institutions (if any), the discretionary function exception does not apply. Where guidance is discretionary, for example, where BOP made *recommendations* for institutions to adopt discretionary or mandatory rules, depending on the needs of each institution, the discretionary function

---

[3] *See* examples, attachments to Reiser, Sassaman, and Turner-Foster Declarations (Docket Nos. 38-3, 38-4, 38-5); Plaintiffs' Exhibits One-Five  (Docket Nos. 42-1 – 42-5.)

exception applies.  However, where Defendants adopted mandatory procedures for FCI Fort Dix, the discretionary function exception does not shield the United States from FTCA claims. *See, Gray v. U.S.*, 486 F. App'x 975, 978 (3d Cir. 2012) (finding discretionary function exception inapplicable where policy in BOP Program Statement specifically prescribed a course of conduct for prison staff to follow.). Based on the exhibits submitted by the parties on this issue, some of the alleged acts of negligence in the SAC are based on mandatory pandemic procedures, while others are not.[4] Plaintiffs, however, have not clearly identified allegations in the SAC that are based on specific mandatory BOP or FCI Fort Dix policies or procedures.  Therefore, the Court will request supplemental briefing.  In their supplemental brief, Plaintiffs shall identify, for example, as in footnote 4 *supra*, the mandatory language from a BOP or FCI Fort Dix policy or procedure that supports a specific allegation in the SAC. Defendants may file a responsive supplemental brief.

For Defendants' discretionary actions, the second element of the discretionary function test turns on whether Plaintiffs' allegations reflect the type of judgment exercised by the BOP that the discretionary function exception was designed to shield.

---

[4] *See e.g.*, Pls' Exhibit One, Docket No. 42-1 at 7, under the heading "INTAKES," the following language is mandatory "inmates who test positive and/or are symptomatic will be placed immediately in isolation. They will remain in medical isolation until they meet CDC symptom-based (for symptomatic inmates) or time-based (for asymptomatic inmates) release from isolation criteria. *See also e.g.*, Attach. A to Reiser Decl., Docket No. 38-3 at 22, "COVID-19 GUIDANCE FOR INMATES WHO ARE TRANSFERRING OR RELEASING FROM A BOP FACILITY" the following language is discretionary "an inmate who is currently in or meets the criteria for COVID-19 medical isolation should not be transferred or released from BOP custody unless absolutely necessary (e.g. immediate release)."

The discretionary function exception of the FTCA is designed to shield from liability public policy decisions, including those grounded in social, economic and political policy. *Gaubert*, 499 U.S. at 322-23. Relevant here,

> [w]here Congress has delegated the authority to an independent agency or to the Executive Branch to implement the general provisions of a regulatory statute and to issue regulations to that end, there is no doubt that planning-level decisions establishing programs are protected by the discretionary function exception, as is the promulgation of regulations by which the agencies are to carry out the programs.

*Id.* at 323.

Plaintiffs' allegations are premised on Defendants' duties to ensure the safety of all prisoners and staff at the institution and ensure that the institution operated in an orderly fashion. (SAC ¶¶ 14-18, Docket No. 16.) Although not cited in the SAC, this duty arises from 18 U.S.C. § 4042, which provides, in relevant part:

> (a) In general.--The Bureau of Prisons, under the direction of the Attorney General, shall—
>
> (1) have charge of the management and regulation of all Federal penal and correctional institutions;
>
> (2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise;
>
> (3) provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States....

Thus, many of Plaintiffs' allegations fall squarely within the second element of the discretionary function exception. *Rodriguez v. United States*, 695 F. App'x 669, 673 (3d

Cir. 2017) ("every Court of Appeals to have addressed the issue precedentially has reached the same conclusion" "§ 4042(a) leaves the performance of those general duties to the discretion of the BOP") (emphasis added).

Even for those claims that are subject to the discretionary function exception, the analysis continues because "[f]ederal officials do not possess discretion to violate constitutional rights…." *U.S. Fid. & Guar. Co.*, 837 F.2d at 120). Plaintiffs allege Defendants' conduct violated the Cruel and Unusual Punishments Clause of the Eighth Amendment. Therefore, unless Plaintiffs have failed to state an Eighth Amendment claim, the application of the discretionary function exception may not be decided until the Court reaches the merits of the constitutional claims. *See*, *Davis*, 824 F.3d at 348 ("when a factual challenge to jurisdiction attacks facts at the core of the merits of the underlying cause of action," district courts should find jurisdiction and address the attack on the merits of the plaintiff's case) (quoting *Kulick*, 816 F.2d at 898 n. 5 (3d Cir. 1987) (internal quotation marks omitted in *Davis*)). Ultimately, the Court must reserve its decision on the application of the discretionary function exception for further briefing.

### D.   FTCA Quarantine Exception

#### 1.   Standard of Law

Pursuant to 28 U.S.C. § 2680(f): "… section 1346(b) of this title shall not apply to-- … [a]ny claim for damages caused by the imposition or establishment of a quarantine by the United States." It appears that the Supreme Court and the Third Circuit Court of Appeals have not interpreted the meaning of § 2680(f). Therefore, this

Court must do so. The Supreme Court has instructed courts to interpret statutes according to their "'ordinary, contemporary, common meaning.'" *Sw. Airlines Co. v. Saxon*, 142 S.Ct. 1783, 1788 (2022) (quoting *Sandifer v. United States Steel Corp.*, 571 U.S. 220, 227 (2014) (quoting *Perrin v. United States*, 444 U.S. 37, 42, (1979)); *see also New Prime Inc. v. Oliveira*, 139 S.Ct. 532, 538-539 (2019)). In doing so, words "'must be read' and interpreted 'in their context,' not in isolation." *Id.* (quoting *Parker Drilling Management Services, Ltd. v. Newton*, 139 S.Ct. 1881, 1888 (2019) (quoting *Roberts v. Sea-Land Services, Inc.*, 566 U.S. 93, 101, (2012)). The starting point is with the definition of the words used in the statute. *See e.g.*, *Id.* at 1888-90 (considering dictionary definitions of relevant statutory terms). Courts may also look to the context of the statute and other canons of statutory construction to confirm the ordinary meaning of the word. *Id.* at 1789.

### 2.     The Parties' Arguments

Defendants observe that 28 U.S.C. § 2680(f) precludes jurisdiction under the FTCA for "[a]ny claim for damages caused by the imposition or establishment of a quarantine by the United States." (Defs' Brief in Supp. of Mot. to Dismiss, Docket No. 38-1 at 44-46.) This provision is applicable to all of Plaintiffs' claim, Defendants assert, because the SAC is focused on BOP's alleged negligence in failing to quarantine COVID-19 positive prisoners. Defendants rely on a case from the Eastern District of North Carolina. (Defs' Brief in Supp. of Mot. to Dismiss, Docket No. 38-1 at 44-45, citing *Wallace v. United States Dep't of Just.*, No. 5:21-CT-3035-D, 2021 WL 2853692, at

21

*2 (E.D.N.C. June 24, 2021), *aff'd*, No. 21-7017, 2022 WL 1024613 (4th Cir. Apr. 6,

Mar. 9, 2018) (unpublished) (quoting *Cascabel Cattle Co. v. United States*, No. B-17-61,

2018 WL 5850575, at *14 (S.D. Tex. Sept. 5, 2018) (unpublished), *report and*

*recommendation adopted*, 2018 WL 5811007 (S.D. Tex. Nov. 6, 2018) (unpublished),

*aff'd*, 955 F.3d 445 (5th Cir. 2020) (additional citations omitted)). There, the district

court found § 2680(f) applicable where the warden of a federal prison was allegedly

negligent for failing to secure a corridor to prevent transmission of COVID-19 by

inmates passing between a quarantined dormitory and a non-quarantined dormitory.

Plaintiffs contend that Defendants have not met their burden to prove the

quarantine exception applies. (Pl's Opp. Brief, Docket No. 42 at 44-49.) First, Plaintiffs

submit that the quarantine exception applies only to quarantines of animals and

damages to property, not public health quarantines of humans. Plaintiffs argue the

*Wallace* case, relied on by Defendants, is not precedential and was wrongly decided.

Second, Plaintiffs maintain that the allegations in the SAC fall outside any reasonable

reading of the quarantine exception. The plain text of § 2680(f) covers only the

"imposition or establishment of a quarantine…." Thus, even if § 2680(f) could apply

to public health quarantines of persons, Plaintiffs' damages were not caused by a

quarantine. Instead, Plaintiffs argue their quarantine-related claims center on

Defendants' failure to establish or implement an *effective* quarantine.

In their reply brief, Defendants provide the definition of "quarantine," noting

that it includes isolation of "persons." (Defs' Reply Brief, Docket No. 47 at 12-13.)

Thus, they contend there is no livestock limitation in FTCA's quarantine exception.

Defendants contend allegations that BOP was negligent in effectively imposing a quarantine are excluded by § 2680(f).

### 3.    Analysis

The relevant statutory text excludes from the FTCA's waiver of sovereign immunity "[a]ny claim for damages caused by the imposition or establishment of a quarantine by the United States." 28 U.S.C.A. § 2680(f). Quarantine means isolation of a person or animal afflicted with a communicable disease or prevention of such a person or animal from coming into a particular area, the purpose being to prevent the spread of disease." *Black's Law Dictionary*, 1362 (9th ed. 2009). The ordinary meaning of quarantine encompasses persons and animals. The statute is not limited to livestock quarantines.

But the Court must also determine the meaning of the statutory phrase "any claim for damages *caused by the imposition or establishment of a quarantine* by the United States."  § 2680(f) (emphasis added). Imposition means "to levy or exact" as in a tax or duty. *Black's Law Dictionary*, 824 (9th ed. 2009). "Establishment" has several meanings, relevant here is "the act of establishing; the quality, state, or condition of being established. *Id.*  In turn, "establish" means:  1) "to settle, make, or fix firmly; to enact permanently;" or 2) "[t]o make or form; to bring about or into existence;" or 3) "[t]o prove; to convince someone of;" or 4) "[t]o make (a church or religion) an official, governmentally sponsored institution." *Black's Law Dictionary* 626 (9th ed. 2009).

The District Court in *Wallace* held § 2680(f) immunized the Government from damages caused by "any actions undertaken by the Government to carry out the purposes of the quarantine." 2021 WL 2853692, at *2.  Plaintiffs' claims, however, do not fit within this definition.  Plaintiffs do not allege they were harmed by Defendants' acts in carrying out a quarantine; for example, that they were harmed by the quarantine lock-down conditions imposed on them. Rather, Plaintiffs' damages are based on the Government's alleged failure to impose stricter quarantine protocols to prevent them from becoming infected with COVID-19.  Therefore, the FTCA quarantine exception does not immunize the Government from Plaintiffs' claims that Defendants were negligent.

As discussed above, however, the discretionary function exception immunizes the Government from damages caused by Defendants' discretionary decisions on how to protect inmates from the spread of COVID-19, and this includes their decisions on how to carry out a quarantine in FCI Fort Dix, to the extent that mandatory procedures were not violated. But the discretionary function exception does not apply when Government actions violate the Constitution. In this case, oddly, the question of whether Plaintiffs may bring their damages claims under the FTCA based on discretionary decisions turns on whether those discretionary decisions rose to the level of a constitutional violation, which under the Eighth Amendment requires *deliberate indifference*. Thus, the Court turns to Plaintiffs' constitutional claims, and will first address the procedural aspects.

E.      Exhaustion of *Bivens* Claims

Defendants invoke the exhaustion requirement of 42 U.S.C. § 1997e(a) for dismissal of Plaintiffs' Eighth Amendment claims under *Bivens*. (Defs' Brief in Supp. of Mot. to Dismiss, Docket No. 38-1 at 50-54.) Section 1997e(a) provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Proper exhaustion, in compliance with the procedural rules of the prison's administrative grievance program, is required before a prisoner can bring a lawsuit in a federal court. *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). Defendants seek dismissal of Plaintiff's *Bivens* claims because Plaintiffs alleged in the SAC that they exhausted administrative remedies by fulfilling the FTCA exhaustion requirement, but this does not satisfy the PLRA exhaustion requirement.

Plaintiffs oppose dismissal of their *Bivens* claims based on nonexhaustion because § 1997e(a) does not impose a pleading requirement. (Pl's Opp. Brief, Docket No. 42 at 52-56.) They alleged exhaustion of FTCA administrative remedies in the SAC, but they were not required to allege exhaustion of PLRA administrative remedies. In reply, Defendants argue that dismissal is proper for nonexhaustion under § 1997e(a) because nonexhaustion is apparent on the face of the complaint, where Plaintiffs allege only exhaustion of FTCA administrative remedies. (Defs' Reply Brief, Docket No. 47 at 17-18.)

"[F]ailure to exhaust is an affirmative defense under the PLRA, and [] inmates are not required to specially plead or demonstrate exhaustion in their complaints."

*Jones v. Bock*, 549 U.S. 199, 216 (2007)). In this case, Plaintiffs specifically pleaded FTCA exhaustion but did not plead PLRA exhaustion. The SAC, on its face, does not demonstrate that Plaintiffs failed to exhaust the prison's administrative grievance procedures. Therefore, there is no basis to dismiss Plaintiffs' *Bivens* claims for nonexhaustion under § 1997e(a) at this stage of the proceedings.

### F.   Availability of *Bivens* Remedy

#### 1.   Standard of Law

*Bivens* is "the short-hand name given to causes of action [for damages] against federal officials for alleged constitutional violations." *Bistrian v. Levi*, 912 F.3d 79, 88 (3d Cir. 2018) (alteration added). In *Egbert*, the Supreme Court recently reminded courts that it had not implied any new damages remedies against federal officials for alleged constitutional violations after three Supreme Court cases, *Bivens*, *Carlson*[5] and *Davis*,[6] the last of which was decided in 1980. *Egbert v. Boule*, 142 S.Ct. 1793, 1802 (2022). Since then, the Supreme Court has "come 'to appreciate more fully the tension between' judicially created causes of action and 'the Constitution's separation of legislative and judicial power,'" *Id.* at 1802 (quoting *Hernández v. Mesa*, 140 S.Ct. 735, 741 (2020)). "[C]reating a cause of action is a legislative endeavor." *Id.* Congress is the proper branch of the Government to evaluate policy considerations such as "economic and governmental concerns," "administrative costs," and the "impact on governmental operations systemwide." *Id.* at 1803 (quoting *Ziglar v. Abbasi*, 137 S.Ct.

---

[5] *Carlson v. Green*, 446 U.S. 14 (1980).
[6] *Davis v. Passman*, 442 U.S. 228 (1979).

1856, 1858 (2017). The *Egbert* Court, however, chose not to "dispense with *Bivens* altogether." *Id.* at 1803. Instead, *Egbert* instructs that when courts are asked to imply a *Bivens* damages remedy:

> "the most important question is who should decide whether to provide for a damages remedy, Congress or the courts?" *Hernández*, 589 U. S., at ⸺ – ⸺, 140 S.Ct., at 750 (internal quotation marks omitted). If there is a rational reason to think that the answer is "Congress"—as it will be in most every case, *see Ziglar*, 582 U. S., at ⸺, 137 S.Ct., at 1857-1858—no *Bivens* action may lie.

*Id.* New *Bivens* actions cannot be created where "there is *any* rational reason (even one) to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* at 1805 (emphasis in original) (quoting *Ziglar*, 137 S.Ct., at 1858). "The Court's focus in determining whether such a claim can be brought … is on whether courts should be in the business of creating avenues for liability…." *Graber v. Doe II*, 59 F.4th 603, 609 (3d Cir. 2023).

Egbert does not do away with the two-step inquiry for courts to consider before implying a *Bivens* claim, but it states,

> those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy. For example, we have explained that a new context arises when there are potential special factors that previous *Bivens* cases did not consider. And we have identified several examples of new contexts—*e.g.*, a case that involves a new category of defendants—largely because they represent situations in which a court is not undoubtedly better positioned than Congress to create a damages action. We have never offered an exhaustive accounting of such scenarios, however, because no court could forecast every factor that might

> counsel hesitation. Even in a particular case, a court likely cannot predict the systemwide consequences of recognizing a cause of action under *Bivens*. That uncertainty alone is a special factor that forecloses relief.

142 S.Ct., at 1803–04 (internal quotation marks and quotations omitted).

The first step of the inquiry is whether a cause of action presents "a new *Bivens* context." *Id.* at 1803 (quoting *Ziglar*, 137 S.Ct., at 1859-60). The "proper test" under the first step is whether "the case is different in a meaningful way from previous *Bivens* cases decided by this Court." *Ziglar*, 137 S.Ct., at 1859-60. The Supreme Court recognizes only three cases where it decided whether to imply a *Bivens* damages remedy:[7] *Bivens* itself created a cause of action for violating the Fourth Amendment's protections against warrantless search and arrest. 403 U.S. at 397. *Davis v. Passman*, 442 U.S. 228 (1979), recognized a cause of action for a Fifth Amendment equal protection claim against a Congressman for gender discrimination. *Carlson v. Green*, 446 U.S. 14 (1980), created a cause of action for an Eighth Amendment claim involving the failure to treat a federal prisoner's asthma, which resulted in the prisoner's death.

### 2.    The Parties' Arguments

Defendants submit the Court should not imply a damages remedy for Plaintiffs' *Bivens* claims. (Defs' Brief in Supp. of Mot. to Dismiss, Docket No. 38-1 at 54-64.) Defendants argue that after the Supreme Court's decisions in *Ziglar* and *Egbert*, special

---

[7] "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar*, 137 S.Ct., at 1855.

factors counsel against recognizing an implied damages remedy in the new *Bivens* context presented here. First, Defendants maintain that Plaintiffs' Eighth Amendment pandemic management claims arise in a new *Bivens* context. Plaintiffs' claims involve: 1) the outbreak of COVID-19 after infected FCI-Elkton inmates were transferred to FCI Fort Dix; 2) the outbreak when prisoners were moved into the east side of FCI Fort Dix; and 3) inadequate medical care for prisoners who contracted COVID-19. (SAC ¶¶ 96-191). The Supreme Court has not extended *Bivens* to claims against federal prison officials regarding conditions of confinement. (Defs' Brief in Supp. of Mot. to Dismiss, Docket No. 38-1 at 56, citing *Mammana v. Barben*, 856 F. App'x 411, 414-15 (3d Cir. 2021) (rejecting the argument that *Carlson* recognizes an Eighth Amendment conditions-of-confinement claim against federal officials).

Defendants further contend that Plaintiffs' claims bear little resemblance to the facts in *Carlson*, where the plaintiff suffered extreme deviations from the medical standard of care in the treatment of his asthma. Plaintiffs' claims arise in the context of a global pandemic that required prison officials to prioritize the needs of an entire prison population within its limited resources, unlike *Carlson*, where the prison failed to provide treatment for a single inmate who had asthma.

Next, Defendants maintain that there are alternative remedies for Plaintiffs' claims, and this counsels against creating a *Bivens* remedy in this new context. First, Plaintiffs could have sought relief through BOP's administrative grievance program. Second, Plaintiffs could have sought equitable or injunctive relief from this Court [they have] or moved for compassionate release based on their conditions of confinement.

Third, Plaintiffs could have pursued a damages remedy against the United States under the FTCA, which they have done.

Finally, Defendants submit that other special factors counsel against finding a *Bivens* remedy here, including Congressional action taken, separation of powers, and potential enormous social costs. Congress took action by passing legislation to address the pandemic. (Defs' Brief in Supp. of Mot. to Dismiss, Docket No. 38-1 at 62-63, citing *Melendez v. City of New York*, 16 F.4th 992, 998 (2d Cir. 2021) (cataloging the expenditures and payments made by the federal government in response to the pandemic); *see also, CARES Act*, Pub. L. No. 116-136, 134 Stat. 281 (2020) (providing multiple kinds of relief or protection for individuals effected by quarantines). Congress, however, did not provide a statutory damages remedy against federal officials overseeing prisons for their response to the COVID-19 pandemic. The separation of powers doctrine counsels against "judicial usurpation of the legislative function" in this context. (*Id.* at 63, citing *De La Paz v. Coy*, 786 F.3d 367, 377 (5th Cir. 2015). Finally, Defendants submit that extending *Bivens* to this context might impose enormous societal costs, a decision better made by Congress.

Plaintiffs' oppose dismissal of their *Bivens* claims for damages. (Pl's Opp. Brief, Docket No. 42 at 56-62.) Their *Bivens* claims, they argue, fit squarely within the decisions in *Carlson* and *Farmer*, where the Supreme Court recognized a *Bivens* remedy for Eighth Amendment violations based on inadequate medical care and failure to protect inmate safety. In *Farmer*, the estate of an inmate who died in a federal prison brought a *Bivens* cause of action under the Eighth Amendment based on the prison

officials' failure to protect him from a known risk of substantial harm. 511 U.S. at 831. The Third Circuit has stated that *Farmer* "recognized a failure-to-protect claim under the Eighth Amendment." (*Id.* at 59, quoting *Bistrian v. Levi*, 912 F.3d at 91).

Moreover, Plaintiffs submit that even if their *Bivens* claims arise in a new context, there are compelling reasons to recognize a *Bivens* remedy. First, "the existence of an FTCA remedy does not foreclose an analogous remedy under *Bivens*." (Pl's Opp. Brief, Docket No. 42 at 60, citing *Bistrian*, 912 F.3d at 92; *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001) (It is "'crystal clear' that Congress intended the FTCA and *Bivens* to serve as 'parallel' and 'complementary' sources of liability[.]" (Pl's Opp. Brief, Docket No. 42 at 60, quoting *Carlson*, 446 U.S. at 19-20)). Additionally, "[t]he administrative grievance process is not an alternative" to *Bivens* because it does not remedy harms "which could only be remedied by money damages." (*Id.* at 60, citing *Bistrian*, 912 F.3d at 92.)

Plaintiffs recognize that, under *Egbert* and *Ziglar*, the ultimate question is whether "Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" (*Id.* at 61, quoting *Egbert*, 142 S.Ct., at 1805 (quoting *Ziglar*, 137 S.Ct., at 1858)). The answer, according to Plaintiffs, is that the courts are better suited, as they have done so for many years without direction or interference by Congress. In reply, Defendants' rely on the Supreme Court's statement in *Egbert* that "in most every case" the answer will be that "no *Bivens* action may lie." (Defs' Reply Brief, Docket No. 47 at 18, quoting *Egbert*, 142 S.Ct., at 1803.)

### 3.    Analysis

*Carlson* is the only case where the Supreme Court implied a damages remedy

under the Eighth Amendment based prison officials' failure to provide adequate

medical care to a federal prisoner.  In *Carlson*, the plaintiff

> alleged that [the defendants] being fully apprised of the
> gross inadequacy of medical facilities and staff at the
> Federal Correction Center in Terre Haute, Ind., and of the
> seriousness of [the inmate's] chronic asthmatic condition,
> nonetheless kept him in that facility against the advice of
> doctors, failed to give him competent medical attention for
> some eight hours after he had an asthmatic attack,
> administered contra-indicated drugs which made his attack
> more severe, attempted to use a respirator known to be
> inoperative which further impeded his breathing, and
> delayed for too long a time his transfer to an outside
> hospital. The complaint further alleges that [the inmate's]
> death resulted from these acts and omissions, that [the
> defendants] were deliberately indifferent to [the inmate's]
> serious medical needs, and that their indifference was in
> part attributable to racial prejudice.

*Carlson*, 446 U.S. at 17 n.1. Comparing *Carlson* to the present case, the plaintiff in

*Carlson* was the estate of the deceased inmate, and the defendants were prison officials,

including the Director of the Federal Bureau of Prisons. The obvious differences in

this case are that Plaintiffs here suffered from COVID-19, which was not life-

threatening to them at the time they sought treatment, unlike an acute attack of

asthma, and Plaintiffs here did not die from Defendants' alleged inadequate medical

care. Plaintiffs here did not allege that Defendants were fully apprised of the gross

inadequacy of medical facilities and medical staff at FCI Fort Dix, nor is it obvious

from the facts alleged in the complaint that that medical facilities and staff were grossly inadequate.

This case presents a meaningfully different fact pattern than *Carlson* because the prison officials here were responding to a global pandemic of a new, little known virus that required them to prioritize the medical needs of the entire prison population within the resources they had. Certainly, a prisoner-plaintiff with life-threatening medical emergencies would fall within the context of the claim alleged in *Carlson*. None of the plaintiffs' here allege they suffered a life-threatening need for immediate medical care that prison officials knew could not be provided within FCI Fort Dix. This is enough to present a new *Bivens* context under *Egbert*. Likewise, Plaintiffs' conditions of confinement claims, based on Defendants' response to the spread of COVID-19 in FCI Fort Dix, is undoubtedly a new *Bivens* context, as no prior Supreme Court case addressed prison conditions in light of a global pandemic of a new and highly contagious virus.   The question remains whether special factors counsel hesitation of implying a damages remedy in this new *Bivens* context.

Starting with the *Egbert* Court's prediction that "in most cases" the answer will be that "no *Bivens* action may lie," this Court must consider whether special factors counsel hesitation in implying a damages remedy here. "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Egbert*, 142 S. Ct at 1803 (quoting *Hernández*, 140 S.Ct., at 743.)  The two examples provided in *Egbert* that foreclose an implied *Bivens* remedy are applicable here.  First, if a court cannot predict the  "systemwide" consequences of recognizing a

cause of action under *Bivens* … "[t]hat uncertainty alone is a special factor that forecloses relief." *Id.* at 1804 (internal quotation and citation omitted). "COVID-19 presents highly unusual and unique circumstances that have radically transformed our everyday lives in ways previously inconceivable and have altered [our world] with lightning speed … and unprecedented [results.]" *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 330 (3d Cir. 2020) (internal quotations marks and quotations omitted) (alterations in original). This Court certainly cannot predict the systemwide consequences of recognizing a damages remedy for prisoners who alleged they were not provided adequate medical care for COVID-19.

Second, the *Egbert* Court instructs that a court may not fashion a *Bivens* remedy "if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure." *Egbert,* 142 S.Ct., at 1804 (quoting *Ziglar*, 137 S.Ct., at 1858). In this context, a court *may not* consider "whether a *Bivens* action would "disrup[t] a remedial scheme[];"[8] whether the court "should provide for a wrong that would otherwise go unredressed[;][9] or that "existing remedies do not provide complete relief."[10] "[T]he court must ask only whether it, rather than the political branches, is better equipped to decide whether existing remedies 'should be augmented by the creation of a new judicial remedy…'" *Id.* (quoting *Bush,* 462 U.S. at 388).

---

[8] *Egbert*, 142 S.Ct., at 1804 (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 426 (1988)).
[9] *Id. (quoting Bush v. Lucas*, 462 U.S. 357, 388 (1983)).
[10] *Id.*, (quoting *Bush*, 462 U.S. at 388).

Equitable relief under 28 U.S.C. § 1331 or the BOP's administrative grievance procedure,[11] may not provide complete relief for violations of constitutional rights by federal actors.  But courts must consider whether the judicial branch is better equipped to decide whether existing remedies should be augmented.  There may be such a case, but Defendants' response to the unprecedented COVID-19 pandemic is not such a case. Especially in responding to a global pandemic, it is the role of Congress to evaluate policy considerations, such as "economic and governmental concerns," "administrative costs," and the "impact on governmental operations systemwide." *Id.* at 1803 (quoting *Ziglar*, 137 S.Ct., at 1856, 1858.)  Therefore, this Court will not imply a *Bivens* damages remedy for Plaintiffs' condition of confinement claims.

### G.    Supervisory Liability under *Bivens*

Although this Court has concluded that it should not imply a damages remedy under *Bivens*, Plaintiffs have also sought equitable relief for Eighth Amendment violations. Furthermore, whether Plaintiffs' FTCA claims are barred by the discretionary function exception depends, in part, on whether Plaintiffs stated a cognizable Eighth Amendment claim(s).   Therefore, the Court must address Defendants' motion to dismiss Plaintiffs' Eighth Amendment conditions of confinement and inadequate medical care claims.

### 1.    Standard of Law

---

[11] 28 C.F.R. §§ 542.10 *et seq.*

Under § 1983, supervisors "are liable only for their own unconstitutional actions." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 319 (3d Cir. 2014), *cert. granted*, *judgment rev'd sub nom. on other grounds*, *Taylor v. Barkes*, 575 U.S. 822 (2015)); *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). "[T]he level of intent necessary to establish supervisory liability will vary with the underlying constitutional tort alleged." *Barkes*, 766 F.3d at 319. Supervisors may be liable if, with the requisite level of intent for the constitutional violation alleged, they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *Barkes*, 766 F.3d at 316 (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). Supervisors may also be liable "if [they] participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in the subordinate's unconstitutional conduct." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citations omitted).

The Eighth Amendment protects prisoners from cruel and unusual prison conditions. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). To plead such a claim, a plaintiff must allege facts showing that: (1) the deprivation was sufficiently serious; and (2) the defendant prison officials acted with "deliberate indifference to inmate

health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the element of deliberate indifference, a plaintiff must establish that the prison officials actually knew of and disregarded the serious risk of harm posed by the conditions. *Id.* at 844. However, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* In the context of Eighth Amendment claims for inadequate medical care, "[a] non-physician defendant is not deliberately indifferent to an inmate's serious medical need if the inmate is being treated by a prison doctor, unless the non-physician has reason to believe the inmate is being mistreated or not treated." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)).

## 2.   The Parties' Arguments

Defendants contend Plaintiffs failed to state cognizable Eighth Amendment conditions of confinement and inadequate medical care claims against them as supervisors. (Defs' Brief in Supp. of Mot. to Dismiss, Docket No. 38-1 at 65-71.) Defendants rely on a number of cases where courts have found that general policies and procedures instituted by BOP officials in response to the spread of COVID-19 were not deliberately indifferent to inmate health and safety, even if those policies and procedures were allegedly inconsistently followed or were unsuccessful, because BOP reasonably responded to the risk. (*Id.* at 66-68, citing *Wilson v. Williams*, 961 F.3d 829, 841 (6th Cir. 2020); *Valentine v. Collier*, 978 F.3d 154 (5th Cir. 2020); *Swain v. Junior*, 961 F.3d 1276, 1287 (11th Cir. 2020); *Ross v. Russell*, No. 20-0774, 2022 WL 767093,

at *11 (W.D. Va. Mar. 14, 2022); *Ryan v. Nagy*, No. 20-11528, 2021 WL 6750962, at *9 (E.D. Mich. Oct. 25, 2021), *R. & R. adopted in part*, No. 20-11528, 2022 WL 260812 (E.D. Mich. Jan. 26, 2022); *Grinis v. Spaulding*, 459 F. Supp. 3d 289, 292 (D. Mass. 2020); *Chunn v. Edge*, 465 F. Supp. 3d 168, 203 (E.D.N.Y. 2020); *Aipoalani v. Derr*, Civ. No. 22-00093, 2022 WL 1241822, at *5 (D. Haw. Apr. 27, 2022); *Cook v. Fed. Bureau of Prisons*, Civ. No. 4:21-0766, 2021 WL 6064750, at *2 (N.D. Ohio Dec. 21, 2021).

Furthermore, Defendants contend that Plaintiffs' Eighth Amendment claims are premised on respondeat superior liability, and their allegations that Defendants were personally involved in the prison transfers or other failures to protect inmates from COVID-19 are only conclusory. Defendants seek dismissal of Plaintiffs' medical care claims because none of the individual defendants works in health services at FCI Fort Dix.

Plaintiffs contend they alleged cognizable Eighth Amendment claims in the SAC, which contains allegations that each of the individual defendants were personally involved in violations of Plaintiffs' constitutional rights. (Pl's Opp. Brief, Docket No. 42 at 62-71.) For example, Plaintiffs allege that Defendants Carvajal and English "transferred a large number of inmates from FCI Elkton[, which was] known to be in the midst of a serious COVID-19 outbreak[,] to Fort Dix without an effective plan in place to avoid spreading the virus from transferring inmate[.]" SAC ¶ 97; *see generally Id.* ¶¶ 96-136. And those transfers took place even though both Defendants knew of the immediate danger to individuals at FCI Fort Dix—so much so that Defendant English even requested a transfer moratorium, but only to take effect the

day after the fourth FCI Elkton transfer. *Id.* ¶ 110. Defendants Ortiz and Kodger "failed to enforce mask mandates or social distancing protocols," *Id.* ¶ 86, and Defendants Ortiz, N'Diaye, and Kodger failed to timely test FCI Fort Dix staff, *Id.* ¶ 87.

Second, Plaintiffs allege that the individual defendants were "aware of and adopted and enforced policies that left Plaintiffs and all those similarly situated exposed to infection, severe illness, and death due to COVID-19," SAC ¶¶ 14-18, and Defendants participated in or knew about the unconstitutional conditions, e.g., *Id.* ¶ 231 (summarizing allegations that Defendants "knew of and disregarded an excessive risk to health and safety"). Third, Plaintiff's claim they have alleged that the individual defendants were both involved in and knew about FCI Fort Dix's failure to provide adequate medical treatment.

In their reply brief, Defendants urge the Court to follow decisions where district courts have found that general policies and procedures instituted by BOP officials did not rise to the level of an Eighth Amendment violation, even if those policies and procedures were allegedly inconsistently followed or were unsuccessful in slowing the spread of COVID-19. (Defs' Reply Brief, Docket No. 47 at 22-25.) Additionally, Defendants contend that Plaintiffs have not alleged a plausible claim for relief, which "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element of that claim.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). (*Id.* at 23.) Defendants contend the allegations in the SAC generally

attribute the failures of staff to protect inmate health to safety to them, as administrators, without sufficiently alleging their direct personal involvement.

### 3.   Analysis

Beginning with Plaintiffs' claims regarding Defendants' knowledge and acquiescence in denying them adequate medical care, Plaintiffs have failed to state an Eighth Amendment claim. Plaintiffs have not alleged sufficient facts to show that Defendants, who are not medical providers, knew Plaintiffs were being mistreated or not treated by prison medical providers. *Spruill*, 372 F.3d at 236 (3d Cir. 2004)).  For instance, Plaintiffs allege that when they contracted COVID-19, they were given only Acetaminophen and/or cough medicine.  (SAC ¶¶ 10-13). They allege they were prematurely declared recovered from COVID-19 and forced to work.  (*Id.*, ¶¶ 12-13.) Further, they allege medical staff delayed treating their lingering COVID-19 symptoms or other health conditions that arose during the pandemic.  (*Id.*, ¶¶ 10-11.)  Plaintiffs do not allege any facts to establish how Defendants knew of and acquiesced in the failure of medical staff to adequately or timely provide medical treatment to them.

Turning to Plaintiffs' condition of confinement claims, Defendants cite a number of cases which generally held prison officials were not deliberately indifferent to inmates' health and safety because they responded reasonably to the serious risk to inmate health in response to the COVID-19 pandemic.  The problem with Defendants' reliance on these cases is that the cases arose in the context of motions for preliminary injunctive relief, where it was proper for the courts to address evidence submitted by the defendants to establish Plaintiffs were not likely to succeed on the merits of their

claims, or on motions to dismiss where the plaintiff mentioned the jail's COVID-19 procedures in the complaint or included the procedures as an attachment to the complaint. *See, e.g.*, *Wilson v. Williams*, 961 F.3d 829, 841 (6th Cir. 2020) (on appeal of preliminary injunctive relief); *Valentine v. Collier*, 978 F.3d 154 (5th Cir. 2020) (on motion to stay permanent injunction pending appeal); *Swain v. Junior*, 961 F.3d 1276, 1287 (11th Cir. 2020) (on appeal of preliminary injunctive relief); *Ross v. Russell*, No. 20-0774, 2022 WL 767093, at *11 (W.D. Va. Mar. 14, 2022) (granting motion to dismiss amended complaint, which had jail's pandemic policy attached); *Ryan v. Nagy*, No. 20-11528, 2021 WL 6750962, at *9 (E.D. Mich. Oct. 25, 2021) *R. & R. adopted in part*, No. 20-11528, 2022 WL 260812 (E.D. Mich. Jan. 26, 2022), vacating in part, No. 20-11528, 2022 WL 17091985 (E.D. Mich. Nov. 21, 2022) (affirming grant of qualified immunity and vacating dismissal of state law claim); *Grinis v. Spaulding*, 459 F. Supp. 3d 289, 292 (D. Mass. 2020) (denying preliminary injunctive relief); *Chunn v. Edge*, 465 F. Supp. 3d 168, 203 (E.D.N.Y. 2020) (denying preliminary injunctive relief); *Aipoalani v. Derr*, Civ. No. 22-00093, 2022 WL 1241822, at *5 (D. Haw. Apr. 27, 2022) (Rule 12(b)(6) dismissal for failure to state supervisory liability claim and finding vaccinated prisoner did not allege a serious medical need); *Cook v. Fed. Bureau of Prisons*, Civ. No. 4:21-0766, 2021 WL 6064750, at *2 (N.D. Ohio Dec. 21, 2021) (Rule 12(b)(6) dismissal for failure to allege supervisory defendants' personal involvement in Eighth Amendment claims).

On a Rule 12(b)(6) motion to dismiss for failure to state a claim, this Court may not consider evidence outside the pleadings; for example, the BOP Action Plan or the declarations of BOP officials stating what actions were taken to address the risk of COVID-19 spreading in FCI Fort Dix. Without reference to materials outside the pleadings, the Court cannot conclude that Defendants responded reasonably to the serious risk to inmate health.

Accepting the factual allegations in the SAC as true and making all reasonable inferences in Plaintiffs' favor, they have sufficiently alleged Defendants failed to implement and enforce reasonable measures to protect FCI Fort Dix inmates from the spread of COVID-19. In the SAC, Plaintiffs allege "from the early days of the pandemic, medical and public health experts urged emergency action to fight the spread of COVID-19 in carceral settings, including decarceration, improved access to medical care, compliance with CDC guidelines, and more." (SAC ¶ 38.) Plaintiffs cite to dozens of CDC recommendations for prisons to protect inmates from the spread of COVID-19. (SAC, ¶ 40.) They cite to publicly available guidance from the World Health Organization aimed at slowing the spread of the virus, such as testing prisoners immediately upon showing symptoms. (SAC ¶¶ 40 n. 41, 42.) Based on this publicly available guidance, Plaintiffs' allegations that Defendants' were aware of the actions necessary to protect inmate health from the spread of COVID-19, and that they failed to do so are plausible, at this juncture, although discovery may not bear the allegations out.

### H.   Qualified Immunity

This Court has determined that it should not imply a damages remedy for Plaintiffs' *Bivens* claims. Plaintiffs, however, also seek equitable relief for their Eighth Amendment claims. "[T]he defense of qualified immunity is available only for damages claims—not for claims requesting prospective injunctive relief." *Hill v. Borough of Kutztown*, 455 F.3d 225, 244 (3d Cir. 2006) (citations omitted). Thus, the Court need not address Defendants' qualified immunity defense.

## IV.   CONCLUSION

In summary:  (1) Plaintiff Speed failed to exhaust his FTCA remedies, the remaining Plaintiffs exhausted FTCA remedies; (2) application of the FTCA discretionary function exception requires further briefing; (3) the FTCA quarantine exception does not apply to Plaintiffs' claims; (4) the issue of exhaustion of *Bivens* claims is premature; (5) the Court will not imply a damages remedy for Plaintiffs' *Bivens* claims, but Plaintiffs' also seek equitable or injunctive relief under the Eighth Amendment; (6) Plaintiffs' adequately alleged Eighth Amendment supervisory liability claims regarding conditions of confinement but did not adequately allege Eighth Amendment supervisory liability claims regarding inadequate medical care. Thus, the Court will grant, in part, and deny, in part, Defendants' motion to dismiss.

An appropriate Order

follows. Date: **March 21,2023**

s/Renée Marie Bumb
**RENÉE MARIE BUMB**
**Chief United States District Judge**