[Docket No. 38]

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

|  |  |
|---|---|
| CHRISTOPHER THIEME, JACOB SILVA, SIDDEEQ WILLIAMS, and ROBERT SPEED, individually and on behalf of all others similarly situated, | Civil No. 21-682 (RMB-AMD) |
| Plaintiffs, | **OPINION** |
| v. | |
| UNITED STATES OF AMERICA, et al., | |
| Defendants. | |

**APPEARANCES:**

Lawrence S. Lustberg, Esq., *pro bono* Counsel
Gibbons P.C.
One Gateway Center
Newark, NJ 07102-5310
On behalf of Plaintiffs

       *On behalf of Plaintiffs*

John Francis Basiak, Assistant United States Attorney
U.S. Attorney's Office
402 E. State Street, Room 430
Trenton, NJ 08608

John T. Stinson, Jr., Assistant United States Attorney
Samantha R. D'Aversa, Assistant United States Attorney
U.S. Attorney's Office
Mitchell H. Cohen Building & U.S. Courthouse
401 Market Street, 4th Floor
P.O. Box 2098
Camden, NJ 08101-2098

       *On behalf of Defendants*

**RENÉE MARIE BUMB, Chief United States District Judge**

This matter comes before the Court upon supplemental briefing filed by the parties, [Docket Nos. 52, 58], relating to a motion to dismiss filed by Defendants.[1] The supplemental briefing concerns whether the discretionary function exception to the Federal Tort Claims Act ("FTCA") precludes Plaintiffs' FTCA claims for Defendants' alleged failures to regulate the spread of COVID-19 at FCI Fort Dix Prison. [*See* Docket No. 49 at 18, 20 ("Opinion"); *see also* Docket No. 50 (ordering supplemental briefing).] Plaintiff argues that mandatory policies and procedures promulgated by the Federal Bureau of Prisons ("BOP") defeat Defendants' discretionary function exception defense and that, even if BOP's policies and procedures were not mandatory, Defendants cannot hide behind the discretionary function exception where Plaintiffs have plausibly alleged a violation of the Eighth Amendment to the Constitution of the United States. Defendants disagree. For the reasons set forth below, the Court **DENIES, in part, without prejudice**, Defendants' motion to dismiss the FTCA claims.

---

[1] The Court refers to the parties' submissions as follows: Defendants' Memorandum of Law in Support of its Motion to Dismiss the Second Amended Complaint, Docket No. 38-1 ("Defs.' Br."); Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Second Amended Complaint, Docket No. 42 ("Pls.' Br."); Plaintiffs' Supplemental Memorandum of Law in Further Opposition to Defendant's Motion to Dismiss the Second Amended Complaint, Docket No. 52 ("Pls.' Supp. Br."); Defendants' Supplemental Memorandum of Law in Further Support of its Motion to Dismiss the Second Amended Complaint, Docket No. 58 ("Defs.' Supp. Br.").

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs' Second Amended Complaint alleges widescale mismanagement at Federal Correctional Institution ("FCI") Fort Dix Prison by Defendants—prison administrators—related to their handling of the COVID-19 pandemic. [*See* Second Amended Complaint ("SAC"), Docket No. 16 ¶¶ 3–5.] Plaintiffs allege that Defendants' mismanagement led to mass COVID-19 outbreaks, resulting in thousands of prisoners contracting the virus and becoming sick. [SAC ¶ 3.] Plaintiffs' allegations primarily fall into two buckets—that Defendants recklessly or negligently exposed FCI Fort Dix prisoners to unacceptable health risks by (i) transferring incarcerated individuals from FCI Elkton in Ohio to FCI Fort Dix in September and October 2020, [SAC ¶¶ 96–136]; and (ii) transferring incarcerated individuals to the East Side portion of FCI Fort Dix in September and October 2020, [*id*. ¶¶ 137–64].[2] Plaintiffs brought claims under the FTCA and for monetary and injunctive relief under the Eighth Amendment on behalf of themselves and a proposed class. [*Id*. ¶¶ 224–34, 235–56.] The factual allegations underlying Plaintiffs' FTCA claims, and Eighth Amendment claims are the same. [*Compare* SAC ¶¶ 224–34 (Eighth Amendment claims), *with id*. ¶¶ 235–56 (FTCA claims).] Defendants moved to dismiss Plaintiffs' FTCA claims under Federal Rule of Civil Procedure 12(b)(1) and

---

[2] Plaintiffs also alleged failures to provide adequate medical care to incarcerated individuals who contracted COVID-19. [SAC ¶¶ 165–91.] The Court dismissed Plaintiffs' Eighth Amendment claims for injunctive relief insofar as they were premised on failures to provide adequate medical care. [Opinion at 40.]

moved to dismiss Plaintiffs' Eighth Amendment claim under Federal Rule of Civil Procedure 12(b)(6).

The Court granted in part and denied in part Defendants' motion to dismiss. It dismissed Plaintiffs' Eighth Amendment damages claim brought under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), [*see* Opinion 26–35], but it found that Plaintiffs could state a claim under Rule 12(b)(6) for equitable and injunctive relief under the Eighth Amendment because the Court could not "conclude that Defendants responded reasonably to the serious risk to inmate health," [*id.* at 42]. The Court found, however, that further briefing was needed to determine if the FTCA's discretionary function exception immunized Defendants' conduct from challenge. [Opinion at 17–18.][3] The Court noted that multiple iterations of BOP's policies and procedures, including its Coronavirus Phase Nine Action Plan, [*see* Docket No. 52-1, Certification of Lawrence S. Lustberg, Ex. 1 ("Lustberg Certif.")], contained both mandatory terms, to which the discretionary function exception would not apply, as well as discretionary terms to which the exception would apply. [Opinion at 17.] The Court requested that Plaintiffs identify in their supplemental briefing "the mandatory language from a BOP or FCI Fort Dix policy or procedure that supports specific allegation[s] in the SAC." [*Id.* at 18.]

---

[3] The Court did decide two issues related to Plaintiffs' FTCA claims. First, it dismissed Plaintiff Speed's FTCA claims for failure to exhaust his administrative remedies. [Opinion at 10.] Second, it found that the discretionary function exception precluded negligence claims based on BOP's discretionary decisions to release (or not release) prisoners to home confinement under the CARES Act. [Opinion at 17.]

As to BOP's policies and procedures that were clearly discretionary in nature, the Court explained that the analysis must continue because the discretionary function exception does not apply where a plaintiff alleges that a federal defendant's conduct violates the U.S. Constitution. [*Id.* at 20.] Because Plaintiffs alleged that Defendants' conduct violated the Eighth Amendment, the Court also reserved decision on the application of the discretionary function exception pending further briefing on how Plaintiffs' Eighth Amendment claims interacted with their FTCA claims. [*Id.*]

## II.   LEGAL STANDARD

Defendants moved to dismiss Plaintiffs' FTCA claims under Rule 12(b)(1) for lack of subject matter jurisdiction. [Defs.' Br. at 1, 21–22.] A party may challenge subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) through a facial attack or a factual attack. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). In a facial attack, a party may not dispute the facts alleged in the complaint, and the court must accept the alleged facts as true. *Id.* In a factual attack, a plaintiff's allegations are not entitled to a presumption of truth and the court may weigh and consider evidence outside the pleadings. *Id.* In defending a factual attack to jurisdiction, the plaintiff bears the burden of proving facts supporting subject matter jurisdiction by a preponderance of the evidence. *Id.* The parties agree that Defendants' 12(b)(1) motion is a factual attack to the Court's subject matter jurisdiction. [Defs.' Supp. Br. at 1; Pl.'s Supp. Br. at 5.]

The Third Circuit has cautioned against allowing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction to turn into an attack on the merits. *Davis*, 824 F.3d at 348 (collecting cases). But in a Rule 12(b)(1) factual attack under the FTCA, "the split between jurisdiction and the merits is not always clear." *CNA v. United States*, 535 F.3d 132, 141 (3d Cir. 2008), *as amended* (Sept. 29, 2008). "There will frequently be overlapping issues of proof, causing the jurisdictional challenge to be intertwined with the merits." *S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 344 (3d Cir. 2012). This creates a special problem for plaintiffs. On a motion to dismiss under Rule 12(b)(6), the defendant bears the burden to show that the plaintiff has not stated a claim, with the Court accepting all well-pleaded allegations in the complaint as true. But a Rule 12(b)(1) motion inverts the burden of persuasion with plaintiff required to demonstrate that the court has subject matter jurisdiction. *Davis*, 824 F.3d at 349. And on a factual attack on jurisdiction, Rule 12(b)(1) "allows a district court to make findings of fact that contradict the allegations in the complaint, at the very outset of litigation, before any discovery has taken place." *Id.* at 349 n.18. Thus, where, as here, merits issues and jurisdictional issues overlap, district courts must take care to "demand less in the way of jurisdictional proof than would be appropriate at a trial stage." *Id.* at 35 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).[4]

---

[4] The Court notes that the overlap in jurisdiction and merits in this case is not between application of discretionary function exception and Plaintiffs' state law negligence claims under the FTCA. Rather, it is between the application of

## III.   ANALYSIS

### A.   The Discretionary Function Exception

"When the United States consents to be sued, the terms of its wavier of sovereign immunity define the extent of the court's jurisdiction." *United States v. Mottaz*, 476 U.S. 834, 841 (1986). The FTCA is a limited waiver of the federal government's sovereign immunity for the negligent actions of its employees. *Berkovitz v. United States*, 486 U.S. 531, 535 (1988); 28 U.S.C. §§ 2671–2680. "That waiver, however, is subject to certain exceptions, including the discretionary function exception, at issue in this case." *Xi v. Haugen*, 68 F.4th 824, 837 (3d Cir. 2023). The discretionary function exception claws back federal sovereign immunity for "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty ... whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United*

---

discretionary function exception and Plaintiffs' *Eighth Amendment* claims, which are separate from Plaintiffs' FTCA claims. The Court does not believe that this nuance matters in the analysis because the conduct Plaintiffs allege was negligent under the FTCA is the same conduct that Plaintiff alleges was a violation of the Eighth Amendment. [*Compare* SAC ¶¶ 224–34 (Eighth Amendment claim), *with id*. ¶¶ 235–56 (FTCA claims).] There is thus a clear overlap between the jurisdictional and merits analysis. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 892 (3d Cir. 1977) (holding that dismissal under Rule 12(b)(1) would be "unusual" when the facts necessary to succeed on the merits are at least in part the same as must be alleged or proven to withstand jurisdictional attacks)).

*States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984).

The Supreme Court in *United States v. Gaubert* established a two-part test for determining if the discretionary function exception applies. "First, a court must determine whether the act involves an element of judgment or choice." *United States v. Gaubert*, 499 U.S. 315, 323 (1991). If a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," the exception does not apply because "the employee has no rightful option but to adhere to the directive." *Berkovitz*, 486 U.S. at 536. If no specific course of action is prescribed, the court proceeds to the second step to determine "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Id*. at 322. "Because the purpose of the exception is to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy ... the exception protects only governmental actions and decisions based on considerations of public policy." *Gaubert*, 499 U.S. at 323. Defendants bear the burden of establishing both parts of the discretionary function exception. S.*R.P. ex rel. Abunabba*, 676 F.3d at 333.[5]

---

[5] The Court is careful not to conflate the government's burden of establishing applicability of the discretionary function exception with the standard of review under Rule 12(b)(1). It is the plausibility of Plaintiffs' Eighth Amendment claims viewed through the lens of Rule 12(b)(1) that determines if the discretionary function exception applies at all.

Even if the government can show that both parts of the discretionary function exception apply, there is an additional step. The Court must also determine whether the government's conduct violated the U.S. Constitution in carrying out (or failing to carry out) any discretionary policies. The Third Circuit has recently clarified that "conduct cannot be discretionary if it violates the Constitution" because '[f]ederal officials do not possess discretion to violate constitutional rights.'" *Xi*, 68 F.4th at 388 (quoting *U.S. Fid. & Guar. Co. v. United States*, 837 F.2d 116, 120 (3d Cir. 1988)). In so clarifying, the Third Circuit went on to hold that the discretionary function exception "does not apply to any conduct that violates the Constitution regardless of whether the constitutional rights at issue were clearly established." 68 F.4th at 839.

In an earlier decision, *Rinaldi v. United States*, the Third Circuit held that the discretionary function exception applied to a petitioner's claim that the government "forc[ed] him to reside with an inmate that [the BOP] knew, or should have known, had expressed an intention to kill [him]." 904 F.3d 257, 272 (3d Cir. 2018) (alterations in original). In a footnote, and without so holding, the court seemed to suggest that petitioner could not assert a constitutional violation as a basis to preclude application of the discretionary function exception. *Id*. at 272 n.15; *see also Shahen v. United States*, 2023 WL 1805828, at *8 (E.D. Pa. Feb. 6, 2023) (holding, pre-*Xi*, that plaintiff could not overcome the discretionary function exception to the FTCA by reference to alleged constitutional violations of his Eighth Amendment rights). The Third Circuit's recent holding in *Xi*, however, is clear: Plaintiffs can use

the Constitution as a sword to the government's discretionary function exception shield. The Court does not understand Defendants to argue otherwise.[6]

## B.    Mandatory and Discretionary BOP Policies

Plaintiffs identify four arenas of BOP's COVID-19 response that prescribed a mandatory course of conduct that Defendants had to obey: (1) testing and quarantining of transferees from FCI Elkton; (2) alleged work requirements for allegedly infected inmates; (3) mask wearing for BOP staff; and (4) screening and testing for BOP staff. The Court addresses each in turn finding that the discretionary function exception applies to all but one policy identified by Plaintiffs.

### 1.    *Testing and Quarantining of Inmates from FCI Elkton*

First, Plaintiffs argue that Defendants' failure to test and quarantine FCI Elkton transferees violated mandatory provisions of BOP's Phase Nine Action Plan, as augmented by the BOP's Modified Operations Plan. Plaintiffs allege that between late September to late October 2020, Defendants transferred four waves of individuals incarcerated at FCI Elkton in Ohio to FCI Fort Dix "without an effective

---

[6] Citing an unpublished case from the Fifth Circuit, Defendants suggest that for the discretionary function exception to be inapplicable because of a purported violation of the Constitution, "the [constitutional] provision at issue must [] set forth a clear and specific course of action, which the Eighth Amendment does not." [Defs.' Supp. Br. at 18 (citing *Garza v. United States*, 161 F. App'x 341, 343 (5th Cir. 2005)).] The Court is not persuaded that a constitutional provision must "set forth a clear and specific course of action" to defeat the discretionary function exception. That is especially so post-*Xi*, which only requires a plaintiff at the motion to dismiss stage to plausibly allege a constitutional violation to negate a discretionary function exception defense. *Xi*, 68 F.4th at 840; *see also C.M. v. United States*, 2023 WL 3261612, at *42 (W.D. Tex. May 4, 2023) (questioning the persuasive value of *Garza*).

plan in place to avoid spreading the virus from transferring inmates to staff." [SAC ¶ 97.] Specifically, Plaintiffs allege that in "direct violation of mandatory BOP policies and procedures," [Pls.' Supp. Br. at 12], FCI Elkton transferees were not properly screened and tested for COVID-19 and instead, were "almost immediately mingled with the prisoner population," [SAC ¶ 99] and were forced by Defendants to "move between floors in their units" which resulted in prisoners who had previously tested negative for the virus becoming "quickly infected and began testing positive," [*id.* ¶ 113]. Compounding these violations of a mandatory policy, Plaintiffs further allege that Defendants—despite the surge in COVID-19 cases—continued to order transfers from FCI Elkton, only requesting a transfer moratorium after the fourth scheduled transferred was complete. [*Id.* ¶ 109–11.]

The Court finds that the Phase Nine Action Plan, despite containing some mandatory-sounding terms, does not prescribe a specific course of action to bar application of the discretionary function exception. Instead, the Phase Nine Action Plan is a self-described "guidance" document outlining best practices and general principles—including related to testing and quarantining—for prisons to consider in reacting to a rapidly evolving pandemic. [Lustberg Certif., Ex. 1 at 2 ("This memorandum describes [BOP's COVID-19] Phase Nine Action Plan, which includes an extension of previously disseminated guidance along with new measures to implement in the management of the pandemic.").] For example, even though the Phase Nine Action Plan states that "[a]ll inmates entering an institution *will* require enhanced intake procedures," [Lustberg Certif., Ex. 1 at 7 (emphasis added)], that

11

mandatory language does not eliminate the discretion prisons are afforded to establish such enhanced intake procedures. *See Holbrook v. United States*, 673 F.3d 341, 348 (4th Cir. 2012) ("[T]he existence of some mandatory language does not eliminate discretion when the broader goals sought to be achieved necessarily involve an element of discretion."). Indeed, the bulleted list following that instruction does not describe what enhanced intake procedures must be. Rather, the bullets are replete with qualifying language indicating "recommended" "best practice[s]" of what prisons should "ideally" or "should be" doing with respect to the intake of inmates during the pandemic. [*See, e.g.*, Lustberg Certif., Ex. 1 at 7 (recommending that new inmates "*should* be screened for COVID-19," that "[i]deally, inmates should be quarantined or isolated in single-cells," and that "[w]hen cohorting is necessary, the best practice is to keep cohorted inmates together").

Other relevant BOP documents confirm the discretion inherent in testing and quarantine procedures. "Module 3: Screening & Testing" to BOP's COVID-19 Pandemic Response Plan, [Lustberg Certif., Ex. 12 at 4–7], states that the "indications for testing" include "both asymptomatic and symptomatic inmates with compelling reasons or priorities for testing," [*id.* at 4]. And "Module 4: Medical Isolation and Quarantine" to BOP's COVID-19 Pandemic Response Plan states that "[t]esting for release from COVID-19 medical isolation [or quarantine] is not *recommended* in most cases" and that BOP's "*preference*" is a time-based 14-day isolation/quarantine followed by a test out. [*See* Lustberg Certif., Ex. 13 at 10–12 (emphases added).] Taken together with the Phase Nine Action Plan, Defendants

can meet their burden of establishing that that the discretionary function exception applies to testing and quarantining procedures. *See Sanford v. United States*, 2022 WL 17750754, at *3 –4 (D.S.C. Oct. 18, 2022), *R&R adopted*, 2022 WL 17369375 (D.S.C. Dec. 2, 2022), *aff'd*, 2023 WL 4181333 (4th Cir. June 26, 2023) (discretionary function exception applied to BOP's COVID-19 policies and procedures which, despite some mandatory language, constituted "guidance," "general principles," or "recommended approaches" rather than a mandatory course of action for an employee to follow).

### 2.     *Work Requirements for Allegedly Infected Inmates*

Second, Plaintiffs allege that prisoners were forced to work jobs at FCI Fort Dix while infected with COVID-19 in violation of BOP Program Statement 6190.04 (Infectious Disease Management) (June 3, 2014) ("Program Statement 6190.04"). [Pls.' Supp. Br. at 19–20.] Program Statement 6190.04 provides that "[i]nmates with infectious diseases that are transmitted through casual contact will be prohibited from work assignments in any area, until fully evaluated by a health care provider." [Lustberg Certif., Ex. 6 at 12.] But Plaintiffs allegations regarding inmates returning to work while infected with COVID-19 ignores the fact that, consistent with Program Statement 6190.04, such inmates, as alleged *were* evaluated and cleared to work. [*See, e.g.*, SAC ¶ 131 ("[P]risoners in unit 5812 were forced to begin working in the food service, laundry, and the commissary almost as soon as they were declared recovered."). And as a general matter, BOP's COVID-19-specific guidance did not direct any specific restrictions on work other than recommending the medical

evaluation of infected persons. [*See, e.g.*, Lustberg Certif., Ex. 12 at 23; *id.*, Ex. 13 at 10.] Thus, Plaintiffs' arguments concerning inmate work requirements do not defeat Defendants' discretionary function defense.

### 3.   *Mask Wearing for BOP Staff*

Third, Plaintiffs allege that "prison staff routinely failed to wear masks or other protective equipment," [SAC ¶ 86], despite a BOP memorandum, effective August 27, 2020, entitled "Mandatory Use of Face Coverings for BOP Staff" (the "Mask Memorandum"). [Lustberg Certif., Ex. 7.] The Mask Memorandum provides that "all BOP staff will be required to wear face coverings while at work when social distancing is not possible and in common areas" and that staff "may remove a face covering when working in a private office, cubicle, or workspace where at least six feet of social distance can be maintained." [*Id.* at 1.] Any staff failing to properly wear a face covering would be "provided a direct order to wear the face covering" and if he or she failed to comply, the staff member would be "referred to the Office of Internal Affairs for misconduct." [*Id.* at 2.] The Court finds that the Mask Memorandum clearly outlines a course of conduct that could not be disobeyed by prison staff. It is a mandatory policy to which the discretionary function exception does not apply.

Defendants' own evidence confirms the mandatory nature of the Mask Memorandum. In a Declaration submitted in support of its Motion to Dismiss, Defendants aver that "[a]ll staff and inmates were, and continued to be, issued an appropriate face covering and mandated to wear the face covering when in public

14

*areas where social distancing cannot be achieved.*" [*See* Docket No. 38-3, Declaration of James Reiser ¶ 6(c) ("Reiser Decl.").] Nonetheless, Defendants argue that because the Mask Memorandum "offers a blanket exemption … when staff are in a workspace where at least six feet of social distance can be maintained," [Defs.' Supp. Br. at 11], the Mask Memorandum is covered by the discretionary function exception. But carve-outs and exemptions do not transform an otherwise mandatory policy into a discretionary one. Even mandatory policies require some degree of discretion in determining whether they apply at all. The course of conduct required by the Mask Memorandum was clear: wear a mask or face consequences. The discretionary function exception will not shield against Plaintiffs' FTCA claims related to masking. [*See* FAC ¶¶ 50, 70, 86, 188.]

### 4.  *Screening and Testing for BOP Staff*

Finally, Plaintiffs argue that Defendants did not screen and test FCI Fort Dix staff in contravention of BOP's allegedly mandatory "Modified Operations Plan." [Lustberg Certif., Ex. 4 at 1–2.] The Modified Operations Plan states that "[i]n addition to screening and testing inmates, temperature checks and COVID-19 screening is being conducted for staff, contractors, and other visitors to our correctional institutions, with those who register a temperature of 100.4° Fahrenheit or higher denied access to the building." [*Id.*] But as Defendants correctly note, the only thing this language does is describe BOP's current actions; it mandates nothing regarding staff testing. [Defs.' Br. at 12.] The discretionary function exception

15

therefore bars Plaintiffs' FTCA claims as they relate to screening and testing of BOP staff.

**C.    Discovery is Required to Determine Whether Plaintiffs Can Plausibly Allege a Violation of the Eighth Amendment Such that the Discretionary Function Exception Does Not Apply**

The Court finds that discovery is required to determine whether Plaintiffs can plausibly allege a violation of the Eighth Amendment such that the discretionary function exception would not apply at all. In so finding, the Court does not rely on its earlier ruling that Plaintiffs could plausibly state an Eighth Amendment claim for equitable and injunctive relief under Rule 12(b)(6). [Opinion at 42.] As Defendants note, the Court, in reaching that conclusion, did not consider evidence outside of the pleadings and accepted all of Plaintiffs' allegations as true. [*Id.*] Here, Defendants' factual attack on the Court's jurisdiction under Rule 12(b)(1) means that the Court can and will consider the documents submitted outside of the pleadings. *Xi*, 68 F.4th at 840.[7]

---

[7] The Court is mindful that in *Xi*, the parties apparently agreed that the federal defendants' discretionary function exception defense was a facial rather than factual attack on jurisdiction, *Xi v. Haugen*, No. 17-02132, ECF No. 34 at 7, and in evaluating whether the plaintiff could defeat the discretionary function exception by alleging a constitutional violation, the Third Circuit "accept[ed] the facts alleged in the Complaint as true and dr[e]w all inferences in Xi's favor." *Xi*, 68 F.4th at 832. But the standard articulated in *Xi* appears to be the same whether the challenge is under Rule 12(b)(6) or a factual attack to subject matter jurisdiction under Rule 12(b)(1)—"[a]t the motion-to-dismiss stage, all a plaintiff must do to negate the discretionary function exception is plausibly allege a constitutional violation." *Xi*, 68 F.4th at 840. The Court thus undertakes that exercise through the lens of a factual attack to subject matter jurisdiction under Rule 12(b)(1).

### 1. *Standard Under the Eighth Amendment*

Prison officials have a duty under the Eighth Amendment to provide humane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To state an Eighth Amendment conditions of confinement claim against prison officials, a plaintiff must meet two requirements, one objective, and one subjective. First, under the objective prong, a prisoner-plaintiff must show that the depravation of humane conditions was "sufficiently serious" resulting in the denial of "the minimal civilized measure of life's necessities." *Id.* at 834 (first quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), and then quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Second, under the subjective prong, a prisoner-plaintiff must show that the named prison officials had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 297). The requisite state of mind is one of "deliberate indifference to inmate health or safety" that the defendant prison official must have known about and disregarded. *Farmer*, 511 U.S. at 834; *Jones v. Ellis*, 2021 WL 5015921, at *3 (D.N.J. Oct. 28, 2021) ("[A] detainee asserting deliberate indifference based on exposure to COVID-19 must [] establish that the Defendant had the requisite mental state, which is akin to recklessness."). "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability … even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. But their response to that substantial risk must be reasonable. *Id.*

### 2. *Plaintiffs Have Plausibly Alleged Objectively Serious Deprivations to their Health and Safety*

Both the parties and the Court recognize the seriousness of the threat posed by COVID-19. The virus—especially during the relevant time-period alleged pre-vaccine—has been well-known to cause a substantial risk of serious harm including hospitalization or death. In crowded prison settings, those substantial risks are more pronounced as the virus spreads rapidly in close quarters from person to person. [*See* SAC ¶¶ 34–36; *Helling v. McKinney*, 509 U.S. 25, 33 (1993) (housing in which incarcerated persons "were crowded into cells [with others who] had infectious maladies such as hepatitis and venereal disease … was one of the prison conditions for which the Eighth Amendment required a remedy").] The Court thus finds that Plaintiffs allegations are plausible under the objective prong of the Eighth Amendment. *See Wilson v. Williams*, 961 F.3d 829, 839–40 (6th Cir. 2020) (finding objective prong of Eighth Amendment satisfied given the transmissibility of COVID-19 in prison as well as the seriousness of the virus's symptoms).

### 3. *Discovery is Needed Regarding Whether Plaintiffs Have Plausibly Alleged That Defendants Were Deliberately Indifferent to Objectively Serious Conditions of Confinement Affecting Prisoner Health and Safety*

The closer question is whether Plaintiffs have plausibly alleged that Defendants were deliberately indifferent to the objectively serious harm COVID presented. BOP and Defendants were no doubt "aware of and understood the potential risk of serious harm to inmates at Elton through exposure to the COVID-

19 virus." *Wilson*, 961 F.3d at 840. The key issue, considering all evidence properly before the Court on a Rule 12(b)(1) motion to dismiss, is whether Defendants responded reasonably to that risk. *Id.* The Court focuses on the primary factual circumstance which it concludes Plaintiffs can plausibly allege a constitutional violation—the management of the FCI Elkton transfers. [SAC ¶¶ 96–136.][8]

Plaintiffs do not dispute that each of the FCI Elkton transferees were tested upon arrival at FCI Fort Dix. Rather, they allege that FCI Elkton transferees who tested negative upon arrival at FCI Fort Dix were immediately mingled with the general prisoner population at FCI Fort Dix as opposed to being strictly held in a separate quarantine. [*Id.* ¶ 99.] Compounding that error, Plaintiffs allege that Defendants (i) "forced prisoners, including COVID-19 negative and positive prisoners, to move between floors in their units, as a result of which prisoners who had previously tested negative for the virus were quickly infected and began testing positive shortly thereafter," and (ii) did not request a moratorium on further prison transfers until the final FCI Elkton transfer was complete. [*Id.* ¶¶ 110–19.]

---

[8] Plaintiffs' Eighth Amendment allegations regarding the East Side outbreak stems from the FCI Elkton transfer allegations. What Plaintiffs allege was reckless about transferring prisoners within units on the East Side of the prison and between the West Side of the prison and the East Side of the prison, is that transfers occurred during a COVID-19 outbreak, allegedly started because of Defendants' failures in handling the FCI Elkton transfers. [SAC ¶¶ 138 ("[J]ust one day after transferring six COVID-19 positive prisoners into Fort Dix, Defendants transferred several people into unit 5711, which is on the East Side of the facility. Meanwhile, Defendants Ortiz and Kodger continued to transfer prisoners between units on the East Side, including transferring prisoners from unit 5703, the quarantine unit, into other units.").] Thus, the parties need to focus in discovery on Plaintiffs' allegations related to the FCI Elkton transfers.

Plaintiffs' evidence that Defendants recklessly failed to impose a quarantine following transfers from FCI Elkton—which was experiencing a COVID-19 outbreak of its own at the time of the transfers—is largely inferential. They cite evidence that COVID-19 cases at FCI Fort Dix dramatically spiked during Fall 2020, [Lustberg Certif., Ex. 8 at Ex. 6], and attribute that spike to Defendants' alleged recklessness in carrying out intake and transfers procedures. Plaintiffs also point to matters of public record and evidence submitted in other cases showing that there were no cases of COVID-19 just prior to first FCI Elkton transfer and that, with each transfer, COVID-19 cases climbed. [SAC ¶¶ 102–05 (citing, *e.g. United States v. Rodriguez*, 16-CR-07 (AJN) (S.D.N.Y. filed November 20, 2020), Docket No. 59, Declaration of Kimberly Kodger ¶ 9–10).]

Defendants dispute Plaintiffs' allegations and offer their own evidence in support of dismissal. In a declaration submitted by a BOP case management coordinator, Defendants aver that once a FCI Elkton-transferee tested positive for COVID-19, they would be sent to individual isolation but if they tested negative for COVID-19, the prisoner would be moved to a quarantine floor and not released the general prison population. [*See* Reiser Decl. ¶¶ 27–28.] Additionally, a memorandum sent from Defendant Ortiz to Defendant English suggests that the spike in COVID-19 cases was attributable, not due to intermixing between FCI Elkton-transferees and the general FCI Fort Dix population, but from FCI Fort Dix prison staff that may have brought in the virus from the outside the facility and subsequentially passed it onto FCI Fort Dix inmates. [Lustberg Certif., Ex. 8 at Ex. 6.]

20

The Court finds that, at this stage, the evidence submitted is inconclusive for purposes of establishing the Court's subject matter jurisdiction over Plaintiffs' FTCA claims through the Eighth Amendment. Plaintiffs allege one thing, Defendants aver another. If Plaintiffs are right that FCI Elkton transferees were immediately mingled with the general prisoner population without any real quarantine and Defendants continued to order FCI Elkton transfers nonetheless, that could support a finding the Defendants acted recklessly in the face of a serious risk of harm. But if Defendants are right that they properly sorted transferees into isolation and quarantine and tested transferees in and out of isolation and quarantine, Defendants would not be deliberately indifferent under the Eighth Amendment.[9]

It is Plaintiffs' burden to establish subject matter jurisdiction, but because the Eighth Amendment allegations overlap with issues of FTCA jurisdiction, the Court must be careful to not prematurely grant Defendants' Rule 12(b)(1) motion and will not do so here given questions regarding Plaintiffs' constitutional defense to the discretionary function exception. *S.R.P. ex rel. Abunabba*, 676 F.3d at 344 ("By requiring less of a factual showing than would be required to succeed at trial, [we]

---

[9] And the Court notes that occasional negligence in carrying out such procedures would not be enough to support a finding of deliberate indifference. *See Ross v. Russell*, 2022 WL 767093, at *11 (W.D. Va. Mar. 14, 2022) (reasoning that even if inmates "were not always properly quarantined, properly separated, or properly tested, and equipment and cleaning supplies were not always readily available," those allegations viewed "in conjunction with all steps that the prison officials did take to respond to the known risk" did not "reflect that any of the defendants in charge of creating or implementing overall policies were deliberately indifferent").

ensure that [district courts] do not prematurely grant Rule 12(b)(1) motions to dismiss claims in which jurisdiction is intertwined with the merits and could be established, along with the merits, given the benefit of discovery."). Accordingly, the Court will deny Defendants' motion to dismiss the FTCA claims, in part, without prejudice. The Court will revisit the question of its jurisdiction after the completion of relevant and expedited discovery focusing on the FCI Elkton transfers. *See* 5B Wright & Miller, Federal Practice & Procedure § 1350 (3d ed.) ("The district court may postpone a decision on the question of subject matter jurisdiction … if [the evidence submitted is] inconclusive.") (collecting cases); *James S. ex rel. Thelma S. v. Sch. Dist. of Philadelphia*, 559 F. Supp. 2d 600, 617 (E.D. Pa. 2008) (finding record on 12(b)(1) factual challenge incomplete and inconclusive, denying motion to dismiss, and ordering relevant discovery).[10]

---

[10] If, after discovery and briefing, the Court determines that Plaintiffs' Eighth Amendment claims fail, that would also mean that Plaintiffs' FTCA claims fail because Plaintiffs would no longer be able to use the Eighth Amendment to re-establish the FTCA allegations that the Court concluded (at this stage) were barred by the discretionary function exception. If that happens, the only remaining issue would be Plaintiffs' FTCA allegations related to masking procedures since (again, at this stage), the Court determined that the Mask Memorandum does not fall within the discretionary function exception.

IV.    **CONCLUSION**

For the foregoing reasons, the Court **DENIES, in part, without prejudice,**

Defendants' Motion to Dismiss the Amended Complaint. An accompanying Order

shall issue.

**November 30, 2023**                              **s/Renée Marie Bumb**
Date                                                              RENÉE MARIE BUMB
                                                                     Chief United States District Judge

23