IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| CHRISTOPHER THIEME, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, *et al.*, <br><br> Defendants. | Civil No. 21-682 (RMB-AMD) <br><br> **OPINION** |

**APPEARANCES:**

Lawrence S. Lustberg
Ruth O'Herron
Gibbons P.C.
One Gateway Center
Newark, NJ 07102-5310
On behalf of Plaintiffs

    *Pro bono Counsel on behalf of Plaintiffs*[1]

John Francis Basiak, Assistant United States Attorney
U.S. Attorney's Office
402 E. State Street, Room 430
Trenton, NJ 08608

John T. Stinson, Jr., Assistant United States Attorney
Samantha R. D'Aversa, Assistant United States Attorney
U.S. Attorney's Office
Mitchell H. Cohen Building & U.S. Courthouse
401 Market Street, 4th Floor
P.O. Box 2098
Camden, NJ 08101-2098

    *Counsel on behalf of Federal Defendants*

---

[1] The Court thanks pro bono counsel for their extraordinary efforts in this case.

**RENÉE MARIE BUMB, Chief United States District Judge**

**THIS MATTER** comes before the Court following jurisdictional discovery on Federal Defendants' Motion to Dismiss the Second Amended Complaint. [Docket No. 38.] For the following reasons, the Court will **GRANT** the Motion to Dismiss.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

Writing primarily for the benefit of the parties, the Court offers only a brief summary of the factual allegations and procedural background of this case which it set forth in more detail in its prior Opinion and which it incorporates by reference. *Thieme v. United States*, 2023 WL 8271766, at *1–2 (D.N.J. Nov. 30, 2023) ("*Thieme II*").

The operative Second Amended Complaint in this case alleges widescale mismanagement at Federal Correctional Institution ("FCI") Fort Dix Prison by the Federal Defendants ("Defendants")—high-ranking prison administrators—related to their handling of the COVID-19 pandemic. [*See* Docket No. 16, Second Amended Complaint ("SAC") ¶¶ 3–5.] Plaintiffs brought claims under the Federal Tort Claims Act ("FTCA") and for monetary and injunctive relief under the Eighth Amendment to the U.S. Constitution on behalf of themselves and a proposed class. [*Id*. ¶¶ 224–34, 235–56.]

Plaintiffs alleged that Defendants negligently exposed FCI Fort Dix prisoners to unacceptable health risks by transferring incarcerated individuals from FCI Elkton in Ohio to FCI Fort Dix in September and October 2020. [SAC ¶¶ 96–136.] Plaintiffs pointed to matters of public record and evidence submitted in other cases showing that there were no cases of COVID-19 just prior to the first FCI Elkton transfer and that, with each transfer, COVID-19 cases climbed. [SAC ¶¶ 102–05 (citing *United States v. Rodriguez*, 16-CR-07 (AJN) (S.D.N.Y., filed November 20, 2020); Docket No. 59, Declaration of Dr. Kimberly Kodger ¶¶ 9–10).]

Defendants moved to dismiss Plaintiffs' FTCA claims for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and moved to dismiss Plaintiffs' Eighth Amendment claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The Court granted, in part, and denied, in part, Defendants' motion to dismiss. *Thieme v. United States*, 2023 WL 2584102 (D.N.J. Mar. 21, 2023) ("*Thieme I*"). It dismissed Plaintiffs' Eighth Amendment damages claim brought under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), but found that Plaintiffs could state a claim for equitable and injunctive relief under the Eighth Amendment. Plaintiffs' injunctive relief claims under the Eighth Amendment have since been voluntarily dismissed upon consent of the parties, without prejudice. *Thieme I*, 2023 WL 2584102, at *17.

With respect to the FTCA claims, the Court explained that it needed further briefing to determine whether the FTCA's discretionary function exception immunized Defendants' COVID-19 policies and procedures from challenge. *Id.* at *7. The FTCA's discretionary function exception claws back the limited grant of sovereign immunity authorized by the Act for "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty ... whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). And the Court also noted that there is an exception to the exception—even if a federal policy or procedure is discretionary, there can still be FTCA liability if the plaintiff can show that the government violated the U.S. Constitution in carrying out (or failing to carry out) the discretionary policies. *See Xi v. Haugen*, 68 F.4th 824, 837 (3d Cir. 2023).

Upon consideration of the parties' supplemental briefing, the Court denied, in part without prejudice, Defendants' motion to dismiss. It found that the discretionary function exception applied to all but one policy identified by Plaintiffs—a Bureau of Prisons ("BOP")

2

memorandum entitled "Mandatory Use of Face Coverings for BOP Staff" (the "Mask Memorandum") which required "all BOP staff … to wear face coverings while at work when social distancing is not possible and in common areas." *Thieme II*, 2023 WL 8271766 at *5. The Court found that the Mask Memorandum "clearly outline[d] a course of conduct that could not be disobeyed by prison staff. It [was] a mandatory policy to which the discretionary function exception [did] not apply." *Id.*

But the Court did not have enough evidence to determine whether Plaintiffs could plausibly allege a violation of the Eighth Amendment such that the discretionary function exception would not apply at all. *Id.* at *6.[2] The Court, conducting an Eighth Amendment analysis, found that Plaintiffs had plausibly alleged objectively serious deprivations to their health and safety given that COVID, "especially during the relevant time-period alleged pre-vaccine—[was] [] well-known to cause a substantial risk of serious harm including hospitalization or death." *Id.* at *7. But the Court did not have enough evidence to determine whether Defendants "were deliberately indifferent to the objectively serious harm COVID presented," in other words, whether Defendants "responded reasonably" to the "risk of serious harm" posed by COVID. *Id.* *7–8.

So, the Court denied Defendants' motion to dismiss the FTCA claims without prejudice explaining that it would revisit the question of its jurisdiction over the FTCA claims

---

[2] In so finding, the Court did not rely on its earlier ruling that Plaintiffs could plausibly state an Eighth Amendment claim for equitable and injunctive relief under Rule 12(b)(6). That is because Defendants brought their motion to dismiss the Eighth Amendment injunctive relief claims under Federal Rule 12(b)(6) under which the Court could not consider evidence outside of the pleadings and accepted all of Plaintiffs' allegations as true. Defendants' challenge to Plaintiffs' FTCA claim was a factual attack on the Court's jurisdiction under Rule 12(b)(1) which meant that the Court could consider the documents submitted outside of the pleadings. *See Xi*, 68 F.4th at 840.

3

"after the completion of relevant and expedited discovery[.]" *Thieme II*, 2023 WL 8271766, at *8. The Court directed the parties to focus their jurisdictional discovery on the transfer of 289 inmates from FCI Elkton to FCI Fort Dix over four separate transports during September and October of 2020 because Plaintiffs primarily alleged that it was those transfers that allegedly started the rampant COVID outbreak at Fort Dix. *Id.* at *7 n.8; *id.* at *8.

The parties have completed jurisdictional discovery and submitted their second supplemental briefs and replies. [Docket No. 106 ("Pls.' SSB"); Docket No. 107 ("Defs.' SSB"); Docket No. 109 ("Pls.' SSB Reply"); Docket No. 110 ("Defs.' SSB Reply"). The Court must now decide whether the evidence produced in jurisdictional discovery supports Plaintiffs' Eighth Amendment allegations.

## II.   LEGAL STANDARDS

A party may challenge subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) through a facial attack or a factual attack. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). Defendants bring a factual attack to this Court's subject matter jurisdiction. *See Thieme II*, 2023 WL 8271766, at *2. Under a factual attack to subject matter jurisdiction, a plaintiff's allegations are not entitled to a presumption of truth, and the court may weigh and consider evidence outside the pleadings. *Davis*, 824 F.3d at 346 (internal citations and quotation marks omitted).

Prison officials have a duty under the Eighth Amendment to provide humane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To state an Eighth Amendment conditions-of-confinement claim against prison officials, a plaintiff must meet two requirements, one objective, and one subjective. First, under the objective prong, a prisoner-plaintiff must show that the depravation of humane conditions was "sufficiently

4

serious" resulting in the denial of "the minimal civilized measure of life's necessities." *Id*. at 834 (*first* quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), *then* quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The Court has already determined that Plaintiffs have satisfied the Eighth Amendment's objective requirement. *Thieme II*, 2023 WL 8271766, at *7.

Second, under the subjective prong, a prisoner-plaintiff must show that the named prison officials had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 297). The requisite state of mind is one of "deliberate indifference to inmate health or safety" that the defendant prison official must have known about and disregarded. *Farmer*, 511 U.S. at 834; *Jones v. Ellis*, 2021 WL 5015921, at *3 (D.N.J. Oct. 28, 2021) ("[A] detainee asserting deliberate indifference based on exposure to COVID-19 must [] establish that the Defendant had the requisite mental state, which is akin to recklessness."). "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability ... even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. But their response to that substantial risk must be reasonable. *Id*.

### III. ANALYSIS

The evidence produced in jurisdictional discovery has failed to satisfy this Court of its subject matter jurisdiction over Plaintiffs' FCTA claims. Plaintiffs cannot reestablish their FTCA claims through the Eighth Amendment to defeat the application of the discretionary function exception.

#### A. *United States v. Newell*

The Court starts where Plaintiffs start, with *United States v. Newell*. *See* 2021 WL 3269650, at *1 (M.D.N.C. July 30, 2021), *appeal dismissed sub nom., United States v. Burr*, No. 21-7193, 2021 WL 9299047 (4th Cir. Sept. 22, 2021). In *Newell*, a court in the Middle District

5

of North Carolina granted compassionate release motions pursuant to 18 U.S.C. § 3582(c)(1)(A) filed by prisoners incarcerated at FCI Fort Dix, serving sentences imposed by the United States District Court for the Middle District of North Carolina. *Id.* The *Newell* court found that prison officials at Fort Dix did "a poor job responding to the difficulties posed by [COVID] in a congregate living situation" and that "prison officials made decisions … that allowed the virus to spread throughout the prison." *Id.* According to the *Newell* court:

> The BOP (1) transferred a large number of inmates from another prison [*i.e.*, FCI Elkton] known to be in the midst of a serious COVID-19 outbreak to Fort Dix without an effective plan in place to avoid spreading the virus from transferring inmates to staff and inmates at Fort Dix; (2) did not appropriately segregate or quarantine inmates, and allowed COVID-positive inmates to use the same common areas as noninfected inmates; (3) did not provide inmates with [PPE], like masks or sanitizer, despite housing inmates in overcrowded facilities without proper ventilation or sanitation; (4) did not consistently log COVID-positive symptoms in inmates' records; and (5) only enforced social distancing when third-party auditors were present.

*Newell*, 2021 WL 3269650, at *2. The court determined that the government "offered no evidence to contradict or undermine the defendant-inmates' statements and evidence" and "offered no evidence to place the B[O]P's apparently negligent decisions in context." *Id.*

*Newell* is inapposite. It did not consider whether prison officials at Fort Dix were deliberately indifferent under the Eighth Amendment of the Constitution; it considered only whether the conditions at Fort Dix justified granting motions for compassionate release under a different standard. And it did not have the benefit of the jurisdictional discovery now completed by the parties that offer a more complete version of Defendants' decisions with respect to the FCI Elkton transfers. And even the *Newell* court characterized BOP's actions as "negligent," *id.*, and it is well established that deliberate indifference requires a state of mind "*more* blameworthy than negligence." *Farmer*, 511 U.S. at 835 (citing *Estelle v. Gamble*, 429

6

U.S. 97, 104 (1976) (emphasis added)). So, *Newell* does not help resolve the instant Rule 12(b)(1) motion.

      **B.**      **Warning Emails from BOP Staff Do Not Establish Deliberate Indifference**

Next, Plaintiffs suggest that Defendants ignored "[g]rave [w]arnings" from Fort Dix staff that the prison was not equipped to handle transfers from FCI Elkton. [Pls.' SSB at 13–15.] In support of that argument, Plaintiffs cite email correspondence from Fort Dix staff expressing concerns about the impending transfers. [Docket No. 106-1, Certification of Lawrence S. Lustberg, Esq. ("Lustberg Certif."), Exs. F, G.] But those concerns, expressed prior to the completion of any of the FCI Elkton transfers, only tell the Court that at least some BOP staff perceived there to be a risk, a point that is undisputed. The staff emails do not tell the Court whether the Defendants *acted* reasonably (or not) in *response* to that risk. *See Farmer*, 511 U.S. at 842. To the contrary, and as explained below, the evidence shows that Defendants *did* act reasonably in response to the risk posed by the FCI Elkton transfers.

      **C.**      **Defendants Managed the FCI Elkton Transfers Without Deliberate Indifference to Prisoner Health and Safety**

            **1.**     *The Bus Ride from FCI Elkton to FCI Fort Dix*

Defendants managed the transport of the FCI Elkton prisoner-transferees reasonably. For the first transport, FCI Elkton selected 66 inmates who had previously tested positive for and recovered from COVID-19 at that facility. [Stinson Decl., Ex. I, at USA028882.] The transferees were masked for the entire eight-hour bus ride from Ohio to New Jersey. [Docket No. 107-1, Declaration of John T. Stinson ("Stinson Decl."), Ex. C, Deposition of Adam Sassaman ("Sassaman Dep.") at 109:11–113:3.] BOP staff assisting with the transport were given personal protective equipment consisting of gowns, glasses, and N95 masks, and nitrile

7

gloves, which they were required to wear when interacting with inmates on the bus. [*Id.* at 110:17–111:23.]

These were sensible precautions. Plaintiffs argue that the transports were undertaken with deliberate indifference because the FCI Elkton transferees were unable to socially distance on the bus and because the windows on the bus did not open. [Pls.' SSB at 16–17 (citing Lustberg Certif., Ex. C at 105; Ex. H).] But as many courts have recognized, it was not always possible to practice social distancing in prisons. On the bus, it appears to have been impossible. But "[f]ailing to do the 'impossible' doesn't evince indifference, let alone deliberate indifference." *See Swain v. Junior*, 961 F.3d 1276, 1287 (11th Cir. 2020) (district court erred in concluding that the defendants' inability to ensure adequate social distancing constituted deliberate indifference); *see also Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 330 (3d Cir. 2020) (immigration detainees seeking preliminary injunction failed to show substantial likelihood of success on merits of claim that government was deliberately indifferent to their serious medical needs despite assertion that detainees were incapable of social distancing); *Wragg v. Ortiz*, 462 F. Supp. 3d 476, 509 (D.N.J. 2020) ("That physical distancing is not possible in a prison setting, as Petitioners urge, does not an Eighth Amendment claim make and, as such, Petitioners are not likely to succeed on the merits."). In light of that impossibility, Defendants took reasonable measures to ensure the safety of the FCI Elkton prisoner-transferees during their journey from Ohio to New Jersey.[3]

---

[3] Plaintiffs also argue that a Fort Dix safety specialist who rode these buses with the Elkton transferees wore a cloth mask on the bus ride rather than an N95 mask. [Pls.' SSB at 17 (citing Lustberg Certif., Ex. H).] Nobody disputes that wearing an N95 mask offers more protection than a cloth mask. [Sassaman Dep. at 161 (admitting that cloth masks are less effective than N95 masks).] But the relevant CDC guidance at the time was clear that even wearing a cloth mask was sufficient to help limit the spread of the virus. [*Id.*]; *see Trujillo v. Pueblo Cnty.*, 2021

### 2. *Intake, Testing, and Quarantining Procedures*

Plaintiffs challenge the intake, testing, and quarantining procedures of the FCI Elkton transferees upon their arrival at Fort Dix. Defendants designated all of Housing Unit 5703 for intake of the FCI Elkton prisoner transferees. [Lustberg Certif., Ex. E; Stinson Decl., Ex. A, Deposition Transcript of Dr. Kimberly Kodger ("Kodger Dep.") at 112:2–6; 120:19–21 (all four transfers of FCI Elkton prisoners housed in Unit 5703).] Upon their arrival at Fort Dix, the FCI Elkton transferees were met outside by Fort Dix Health Services staff who tested each transferee for the virus. [Kodger Dep. at 112:8–114:7.] Members of Fort Dix's Receiving & Discharge unit ("R&D") then conducted intake screenings of each prisoner. [*Id.*] Health Services and R&D staff wore full PPE (e.g., gowns, gloves, goggles, and an N95 mask) while conducting testing and intake procedures. [Kodger Dep. at 113:6–14.] R&D staff stood behind plexiglass as they conducted intakes. [*Id.*] Once test results came back, FCI Fort Dix staff sorted the FCI Elkton prisoner-transferees appropriately. [*Id.* at 115:12–22.] If a prisoner-transferee received a negative test result, they would be placed back on the bus and taken to the second and third floors of Unit 5703 which were designated as "quarantine" floors. [Sassaman Depo. at 70:9–16.] If a prisoner-transferee received a positive test result, they were separated into a specially designated area, screened for symptoms, and transported to the first floor of Unit 5703 which was designated as the isolation floor. [*Id.*] Prisoners would not be released from the isolation floor until they cleared a COVID-19 "send out laboratory" test.

---

WL 11704764, at *3 (D. Colo. Dec. 3, 2021), *report and recommendation adopted*, 2021 WL 11704765 (D. Colo. Dec. 29, 2021) ("The CDC has stated that wearing cloth face masks … is sufficient to help limit the transmission of [COVID]-19 in correctional and detention facilities."). So, even if the safety specialist was only wearing a cloth mask, that was still a reasonable step to help limit the spread of the virus.

9

[Kodger Dep. at 132:18–132:23.] Prisoners on the quarantine floors would be moved to the isolation floor if they tested positive for COVID. [*Id.* at 130:9–133:19.]

Nothing about these procedures was deliberately indifferent. To the contrary, they reflect that Defendants took reasonable measures to minimize risk to prisoner health and safety. In opposition, Plaintiffs cite prisoner declarations that "most staff members did not wear [full] PPE" during the R&D intake procedure. [Pls.' SSB at 17 (citations omitted).] But it is not clear what elements of PPE R&D staff were allegedly missing. And Plaintiffs cite no evidence to rebut Associate Warden Kodger's testimony that R&D staff conducted their intake procedures from behind a plexiglass barrier and from an appropriate distance away from the prisoner-transferee. [118:5–15.] And as a least one prisoner declaration concedes that Health Services staff conducting testing from close distance *did* wear full PPE. [Lustberg Certif., Ex. A at THIEME-000040.]

Defendants did not have to execute the intake and processing of the FCI Elkton transferees with perfection because that is not what the Eighth Amendment requires. *Freeman v. United States*, 2021 WL 4129479, at *3 (D.N.J. Sept. 9, 2021). The steps taken by Defendants in light of the attendant risks presented by transferring prisoners between FCI Elkton and Fort Dix do not support a finding of deliberate indifference because the steps taken were reasonable. *Cf. Ross v. Russell,* 2022 WL 767093, at *11 (W.D. Va. Mar. 14, 2022) (reasoning that even if inmates "were not always properly quarantined, properly separated, or properly tested, and equipment and cleaning supplies were not always readily available," those allegations viewed "in conjunction with all steps that the prison officials did take to respond to the known risk" did not "reflect that any of the defendants in charge of creating or implementing overall policies were deliberately indifferent").

### 3.    *Prisoner Housing, Movement, and Work Assignments*

Each of the Plaintiffs in this case were infected with COVID-19 while housed in Unit 5812. Plaintiffs' theory of how they first became infected relates to Defendants' decisions with respect to prisoner housing, movement, and work assignments. Three prisoners from Unit 5812—Jose Brito, Nelson Rodriguez, and Matthew Grant—were assigned to assist the R&D unit with the intake of the FCI Elkton prisoner-transferees. [Lustberg Certif., Ex. A at THIEME-000047–50.] Their job duties included cleaning the holding cells where the FCI Elkton transferees were being processed and distributing food and clothing items to the newly transferred prisoners. [*Id.*] Brito, Rodriguez, and Grant were placed into COVID-19 exposure quarantine together in Unit 5851 based on their contact with an R&D staff member who tested positive for the virus. [*Id.*] All three inmates were tested the following day after spending the night in close proximity to one another: Brito tested positive and was moved to isolation housing; Rodriguez and Grant did not test positive and were sent back to Unit 5812, which the prison designed to be on "exposure quarantine" as a whole starting that day. [*Id.*; Lustberg Certif., Ex. K.] By November, nearly every prisoner housed in Unit 5812 tested positive for the virus, contributing to the overall outbreak at the prison. [Lustberg Certif., Ex. L.]

Plaintiffs suggest that Defendants acted unreasonably by staffing R&D with prisoners coming into close contact with prison staff processing the Elkton transferees—several of whom tested positive for COVID upon their arrival—and by sending Rodriguez and Grant back to Unit 5812 after testing negative instead of keeping them in isolation quarantine. [Pls.' SSB at 23–25.] The Court disagrees. As Defendants note, "whether Plaintiffs contracted COVID from this alleged causal chain or some other source—such as from another inmate housed in Unit 5812—is 'wholly speculative.'" [Defs.' SSB Reply at 16 (citing *Brown v. United*

11

*States*, 2023 WL 2632811, at *15 (M.D. Pa. Mar. 24, 2023)).] COVID was a highly transmissible virus and there were many ways to become infected from many potential intervening causes. *See Lackner v. United States*, 2025 WL 314965, at *7 (D.N.J. Jan. 28, 2025). The best the Court can call the decision to release Rodriguez and Grant back to Unit 5812 after being in close contact with Brito is negligent. But (again) negligence is not the touchstone of the Eighth Amendment. *Farmer*, 511 U.S. at 835 (deliberate indifference requires a state of mind "*more* blameworthy than negligence" (citation omitted)). So, Plaintiffs' evidence of causation remains too speculative even following jurisdictional discovery to survive dismissal with respect to this theory.

Plaintiffs' remaining evidence with respect to prisoner housing, movement, and work assignments also do not meet the Eighth Amendment's constitutional floor of deliberate indifference. Plaintiffs assert that Defendants frequently moved prisoners' bed assignments while they were known to be infectious. [Pls.' SSB at 25.] But Plaintiffs do not explain how Defendants exhibited deliberate indifference with respect to bed-assignment movement. And the evidence produced in jurisdictional discovery suggests that Defendants acted reasonably, moving prisoners bed assignments to ensure that quarantined prisoners bunked with quarantined prisoners and that COVID-positive prisoners bunked with COVID-positive prisoners. [*See* Kodger Dep. at 124:5–125:19 (describing the management of housing assignments as a "dynamic" process).]

Plaintiffs also argue that Defendants were deliberately indifferent by deeming cohorts of prisoners recovered from COVID all at once and sending those prisoners back to their work assignments, sometimes still positive with the virus. [Pls.' SSB at 26–27.] But those cohorts were not deemed recovered with the waive of a wand as Plaintiffs suggest. Instead, they were

12

deemed recovered, consistent with CDC guidance, based on the amount of time spent in isolation or quarantine and whether they were experiencing any symptoms. For example, relevant CDC guidance permitted asymptomatic prisoners to be released from isolation after ten days from his first COVID test. [Docket No. 52-14 at 10, BOP COVID-19 Pandemic Response Plan: Module 4. Medical Isolation and Quarantine (Version 1.0, September 8, 2020).] Prisoners with mild or moderate symptoms could also be released from isolation after ten days from his first COVID test if symptoms had improved, and he was fever free from the preceding 24 hours. [*Id.*] These procedures, in line with applicable CDC guidance, were not deliberately indifferent. *Valentine v. Collier*, 956 F.3d 797, 802 (5th Cir. 2020) (prison not deliberately indifferent where it took "measures [] informed by guidance from the CDC and medical professionals [] to abate and control the spread of the virus.").

### 4.    *Prisoner PPE Practices*

Plaintiffs argue that Defendants were deliberately indifferent by failing to provide prisoners with PPE such as N95 masks, despite having enough for staff use. [Pls.' SSB at 18–19.] Courts across the country have consistently held, however, that the failure to provide prisoners with N95 masks, as opposed to a cloth mask, does not amount to deliberate indifference under the Eighth Amendment. *See Taylor v. Macauley*, 2022 WL 3025534, at *8 (W.D. Mich. Aug. 1, 2022); *Johnson v. Kariko*, 2022 WL 4073087, at *5 (W.D. Wash. June 10, 2022), *report and recommendation adopted*, 2022 WL 4017671 (W.D. Wash. Sept. 2, 2022), *aff'd*, 2024 WL 4182220 (9th Cir. Sept. 13, 2024); *Walker v. United States*, 2022 WL 1472872, at *6 (M.D. Pa. May 10, 2022); *Toney v. Gelardo*, 2022 WL 341169, at *3 (D. Colo. Jan. 3, 2022), *report and recommendation adopted*, 2022 WL 341170 (Jan. 26, 2022). The Court agrees.

5.   *Staff Screening, Testing, and Movement*

Plaintiffs argue that Defendants were deliberately indifferent with respect to staff screening, testing, and movement.[4] The Court agrees with Defendants that BOP took reasonable measures with respect to staff health. [Defs.' SSB at 26.] FCI Fort Dix screened all staff for COVID-19 symptoms daily and encouraged staff to get tested. [Stinson Decl., Ex. B, Deposition Transcript of Travis Haczynski ("Haczynski Dep.") at 58:3–59:20; Kodger Dep. 213:8–215:14.] And Fort Dix tried to minimize staff movement when possible. [Haczynski Dep. 75:22–76:17; Kodger Dep. 182:3–185, 272:21–273:11.] Staff were required to where PPE in high-risk areas like quarantine and isolation housing as well as in R&D. [Kodger Dep. 173:24–176:12.] These were reasonable measures to help limit the spread of the virus.

6.   *Failing to Request a Timely Moratorium on Further Transfers*

Finally, Plaintiffs challenge Defendants' decision to complete more transfers from FCI Elkton even as COVID cases continued to spike at Fort Dix. [Pls.' SSB at 19–21.] Shortly after the third bus of FCI Elkton transferees arrived at Fort Dix and about one week before the fourth and final transfer was scheduled, Fort Dix Warden David Ortiz formally requested a moratorium on transfers to BOP Northeast Regional Director Nicole English. [SAC ¶¶ 108–09; SAC Ex. B.] In that letter, Warden Ortiz described the increase in positive COVID-19 cases among both prisoners and staff and the concern that "bed space for isolation and exposure quarantine [would] be inadequate" absent a transfer moratorium. [SAC, Ex. B at 1–

---

[4] The Court has already found that Plaintiffs' FTCA allegations related to staff PPE practices and masking involved mandatory policies are not shielded by the discretionary function exception. As explained below, however, [*infra* at 16–17], those claims cannot go forward because Plaintiffs cannot establish that any negligence with respect to staff PPE practices caused their injuries.

14

2.] Plaintiffs' Second Amended Complaint alleged that, despite Warden Ortiz's letter, Regional Director English "refrained from seeking an immediate moratorium on transfers in order to complete the fourth FCI Elkton transfer as scheduled." [SAC ¶ 111.]

Jurisdictional discovery does not support the allegation that the high-level BOP leadership recklessly rammed through the fourth FCI Elkton transfer despite a moratorium request by Fort Dix leadership. Associate Warden Kodger testified that the prison made the moratorium request with the "understanding [] that [the prison] [was] already going to be receiving" the fourth bus of FCI Elkton transfers. [Kodger Dep. 147 13–17.] In other words, the moratorium request was not to stop the fourth bus; it was to stop any further transfers into Fort Dix from FCI Elkton or elsewhere after receiving the fourth bus. [*Id.* at 154:3–11 ("My personal understanding is that we as an executive staff, as an institution agreed to take the Elkton bus inmates, so when the moratorium was requested, it had to do with future transfers into the institution, not specifically Elkton. This has to do with us being able to manage the facility in the future.").] In fact, Associate Warden Kodger testified that the prison "had a place for [the last bus of FCI Elkton transferees] already designated" and was "confident that [the prison] would be able to handle the last bus" because it already "had a system in place." [*Id.* at 151:10–15.]

The parties dispute whether Defendants were under court-ordered obligations to complete prisoner transfers out of FCI Elkton. [*See* Defs.' SSB at 11; Pls.' SSB Reply at 1–4.] But the Court does not understand Plaintiffs to argue that, as a matter of law, prisoner transfers during the COVID-19 pandemic reflect deliberate indifference. Nor could they make such an argument. Defendants had discretion to undertake prisoner transfers. 18 U.S.C. § 3621(b) (BOP "may at any time … direct the transfer of a prisoner from one penal or

15

correctional facility to another"); *Barden v. Keohane,* 921 F.2d 476, 478–79 (3d Cir. 1991) (18 U.S.C. § 3621(b) invests BOP with "wide discretion to designate the place of confinement for purposes of serving federal sentences of imprisonment.")). Defendants had to manage any attendant risks reasonably. The Court is satisfied that they did so. Having considered the evidence produced in jurisdictional discovery, the Court finds that Plaintiffs cannot establish this Court's jurisdiction over their FTCA claims through the Eighth Amendment.

### D.  Plaintiffs' Face-Covering Claim Will Dismissed as Speculative

Because Plaintiffs have failed to show that Defendants violated the Constitution in carrying out their discretionary functions, the only allegations now remaining are those related to the lack of masking by staff at Fort Dix. The Court found that Defendants' Mask Memorandum did not fall within the FTCA's discretionary function exception because it was a mandatory policy. *Thieme II*, 2023 WL 8271766 at *5.

The Court will now, however, dismiss those allegations because of speculative allegations unconfirmed by jurisdictional discovery that FCI Fort Dix's failures to enforce mandatory staff masking caused Plaintiffs' COVID-19 infections.[5] As this Court has explained since deciding *Thieme II*, "[t]here are many potential intervening causes with a highly transmissible virus, and it would be virtually impossible to determine the cause." *Lackner*, 2025 WL 314965, at *7; *Foard v. United States*, 2024 WL 436378, at *8 (N.D. Ala. Jan. 9, 2024), *report and recommendation adopted*, 2024 WL 420131 (N.D. Ala. Feb. 5, 2024)

---

[5] Defendants did not initially move to dismiss the Second Amended Complaint on the theory that causation was speculative. But because the elements of an FTCA claim are jurisdictional and federal courts may consider dismissal for lack of subject matter jurisdiction at any time, Fed. R. Civ. P. 12(h), the Court can consider that argument now. *DeMolick v. United States*, No. 22-1973, 2023 WL 3562979, at *2 (3d Cir. May 19, 2023) (affirming dismissal of FTCA claim for lack of subject-matter jurisdiction where plaintiff failed to establish that United States owed duty of care).

("Foard's claim fails at the causation stage because he has not introduced any evidence from which a reasonable juror could conclude that the individual defendants' alleged failures to wear face masks caused him to contract COVID-19."); *Barker v. Nash*, 2023 WL 7135881, at *11 (N.D. Ala. Oct. 4, 2023), *report and recommendation adopted*, 2023 WL 7130856 (N.D. Ala. Oct. 30, 2023) (rejecting plaintiff's argument that prison officials' failure to wear face masks, and to enforce the mask mandate, was negligent); *Brown,* 2023 WL2632811, at *15 (M.D. Pa. Mar. 24, 2023) (plaintiff failed to show exposure to COVID-19 "was caused by acts or omissions of [BOP] employees: and failed to account for the possibility that Plaintiff could have innocently or negligently been exposed to COVID-19 by a fellow inmate"); *Walker v. United States*, 2022 WL 1472872, at *3 (M.D. Pa. May 10, 2022) (dismissing a prisoner's FTCA claim alleging negligence for failure to establish causation). Because Plaintiffs' causation theory with respect to staff masking is too speculative, the Court has no jurisdiction to consider that theory under the FTCA. *See Brownback v. King*, 592 U.S. 209, 212 (2021) (FTCA claim requires negligence or wrongful act or omission caused by federal employee); 28 U.S.C. § 1346).

\*   \*   \*

The COVID-19 pandemic presented a unique challenge in our Nation's prisons. But following jurisdictional discovery, the Court "cannot conclude that, when faced with a perfect storm of a contagious virus and the space constraints inherent in a correctional facility, [Defendants] here acted unreasonably[.]" *Swain*, 961 F.3d at 1289. No doubt, the steps Defendants took did not always work. Indeed, it is undisputed that the virus raged through Fort Dix during the Fall of 2020. But the Eighth Amendment does not require perfection, nor does it invite the benefit of hindsight. *Freeman*, 2021 WL 4129479, at *3. It requires reasonable

17

efforts to minimize serious risks to prisoner health and safety. The Court is satisfied upon review of the record as a whole that Defendants undertook those efforts during this challenging period.

## IV. CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendants' Motion to Dismiss the Second Amended Complaint. An accompanying Order shall issue.

**August 29, 2025**                                                **s/Renée Marie Bumb**
Date                                                                        RENÉE MARIE BUMB
                                                                             Chief United States District Judge